**Sid MURRAY et al., Appellants,**

v.

**John BRAZZEL, Appellee.**

**No. 4706.**

Court of Civil Appeals of Texas.

Waco.

Feb. 6, 1969.

Fischer, Wood, Burney & Nesbitt, Allen Wood, Corpus Christi, for appellants.

Butler, Binion, Rice, Cook & Knapp, William E. Wright, Houston, for appellee.

## OPINION

WILSON, Justice.

Plaintiff-appellee Brazzel recovered judgment against Sid Murray, his wife and the Sid Murray Agency for over $200,000 actual and exemplary damages in a jury trial. The subject matter of the suit is Brazzel's claim for agent's renewal commissions, which he contends he is entitled to from his sale of insurance while a salesman for the Murray Agency, after termination of his employment.

Brazzel's petition alleged three counts: (1) the breach of his 1948 written agency contract with the Murray Agency; (2) an action, as he says, "based upon promissory fraud or deceit arising from misrepresentations originally made in 1946 and repeated continually until termination" of his employment in 1963; (3) an action based on alleged wrongful termination by Murray in 1963.

We look first to determine whether the 1948 contract, the interpretation and alleged breach of which is regarded by the parties as of cardinal import in consideration of the other two counts, will support recovery. Excerpts from the portions of the contract which are deemed material to this appeal are quoted in the footnote.[1]

■■■ Appellee relies on a "finding" by the trial court that the 1948 contract provides for vested renewal commissions irrespective of termination of employment. He

---

1. "1. The Agency agrees to employ the salesman to sell Metropolitan Casualty Insurance Company of New York Professional group health and accident insurance policies. * * *

3. The Salesman shall sell policies only to individual members of such professional groups as shall have approved the insurance plan as offered by the Agency; The Agency shall obtain the approval of the professional groups. * * *

4. The Salesman shall receive, at Corpus Christi, Texas, as compensation for his services a commission of 15% of the first years' premium collected on each policy and a commission of 10% on each renewal premium collected thereafter, so long as this contract shall remain in force and unchanged; said commissions shall be subject to change at any time, subject only to the giving of written notice to the Salesman and any reduction shall apply not only to future policies sold but to the renewals collected on policies sold before such reduction. * * *

12. This agreement is subject to a contract between Metropolitan Casualty Insurance Company of New York and A. S. Murray, hereinafter called "Agency Agreements", and the termination of such Agency Agreement shall automatically terminate this agreement. * * *

13. This agreement may, upon fifteen days written notice by one to the other, be terminated, but in the event of termination, the Agency in consideration of the covenant and agreement on the part of the Salesman that he will not endeavor to induce any policyholder to cause his insurance to lapse, does agree to pay the Salesman the reasonable and customary price for his business, except that if the termination is after termination or notice of termination of the "Agency Agreement", there shall be no obligation on the part of the Agency to buy the Salesman's business; except that if the Agency shall be compensated for the business at the time of such termination, Salesman shall share in the compensation received, in the proportion that his business bears to the total business of the Agency and in direct ratio as his commission compares to the Agency's commission. * * *

16. This agreement is assignable by the Salesman upon approval by the Agency of the purchaser and any subsequent purchaser shall have the same right to assign subject to the approval of the Agency; but the Agency shall have the prior right and option to purchase the business from the Salesman or any subsequent purchaser at the same price obtainable from any third person acceptable to the Agency. * * *

17. This agreement supersedes all previous agreements whether written or oral, and is the full and complete agreement between the parties hereto. * * *"

argues this "finding" is unassailed by appellants. In a jury case the trial court is not authorized to make findings other than those specified in Rule 279, Texas Rules of Civil Procedure. Ditto v. Ditto Investment Co., 158 Tex. 104, 309 S.W.2d 219, 220; see authorities cited, Sears, Roebuck and Company v. Coker, Tex.Civ.App., 428 S.W.2d 710, syl. 1, writ ref. n. r. e. Consequently we do not, as appellee urges, treat the court's conclusion of law procedurally as constituting such a finding. From its 139 points appellants present 26 pertaining to the 1948 contract, its construction and effect; and they have effectually preserved their attack on this basis of recovery.

Appellee concedes the 1948 contract was not induced by fraud. He states it is unambiguous, and correctly expresses the agreement of the parties. The issue narrows to whether the contract entitles Brazzel to renewal commissions after termination of the contract. The contest over this question, in our opinion, obscured the real issue on the contract aspect of the case, and resulted in trial and submission on an erroneous theory.

The record shows the Murray Agency was engaged in selling "association" insurance to members of organizations such as the State Bar of Texas, engineering, accounting, medical and realtor organizations, whereby insurance was made available at lower "wholesale" rates. Upon approval of an association, Murray obtained proposals from insurance companies, which, if acceptable to the association, were sold to members. Murray kept the association informed of the status of the insurance program, collected premiums and paid claims. Salesmen sold and serviced policies. These comprised disability income protection and major medical insurance.

According to Murray's testimony, in 1961 the major medical insurance had resulted in an excessive loss which would have required a change in coverage or an increase in premium, whereas the income protection business resulted in a profit. It was considered that change in coverage or increase in premium would result in withdrawal of sponsorship by the associations; Murray "could not find any insurance company that was willing to take over the major medical insurance"; and the initial company would not continue the program without reduction in coverage or substantial premium advance.

Murray induced Mutual of New York in 1963 to replace all association insurance, both medical and income protection. The initial company "did not want the business" on this basis, and it was necessary to find a company which "would take the bad business". The new company, under this replacement plan, however, refused to exchange policies and all old policies were cancelled; a group plan was developed by which a master contract was issued to the associations and individual certificates issued to insured members. The plan included reducing loss experience by improved underwriting and modified certificate provisions. Thereafter the original policies "were not on Murray's books", but the original policy holders held certificates under the new group, or master policy agreement issued by MONY.

Murray terminated the 1948 contract in March, 1963. It was not terminated as a result of termination of the agency agreement as referred to in paragraphs 12 and 13 of the 1948 contract. Notice of termination by Murray to Brazzel preceded notice of termination of the agency agreement.

In the wake of voluminous evidence to this general effect, the court submitted without objection by appellee, a special issue inquiring whether Murray recommended "without good cause", that the associations transfer their income protection plans to Mutual Life Insurance Company of New York. The jury answered, "No". There is another jury finding to the effect that Murray intended that the MONY insurance would be a "replacement" of the existing policies. There were numerous other evidentiary findings, and others which we consider immaterial.

We come now to apply the terms of the contract.

■ By paragraph 13 either party is given the right to terminate after notice. Does Brazzel's right to compensation end with termination? The contract answers this question in the negative, as will be seen; but the right to renewal commissions ended with termination. The latter, by the clear terms of paragraph 4, Brazzel was to receive "so long as this contract shall remain in force and unchanged". When it ceased to be "in force and unchanged" by exercise of the right of termination under paragraph 13, Brazzel's rights became determinable by the provisions of the latter paragraph.

Brazzel's rights and measure of recovery and Murray's obligation upon termination, as delineated under paragraph 13, are that Brazzel is to receive and Murray "does agree to pay the salesman the reasonable and customary price for his business".

■ Neither the contract, the pleadings, the testimony nor the verdict furnishes a basis or formula from which judgment may be rendered for "the reasonable and customary price" payable for business attributable to Brazzel, and we are not authorized to devise one. Appellant's points complaining of the measure of damages submitted are sustained. That measure is fixed by the contract. The quantum of damage under the contract is a question for the fact finder, which has not yet made a finding.

There are jury findings as to renewal commissions Brazzel would have earned from date of termination to time of trial, as to the probable amount of future renewal commissions, and as to the "market value of business" on Murray's books written by Brazzel prior to termination. None of these findings solve the ultimate issue.

■ In our opinion recovery is not authorized on the basis of alleged "promissory fraud" or fraudulent representations prior to the 1948 contract. There is no suggestion they induced the written agreement, which "supersedes all previous agreements, whether written or oral".

Brazzel argues that recovery is predicable on a series of jury findings to the effect that in 1959 Murray represented to him that renewal commissions on previous sales "would be paid to him even if he sold no further policies," in order to persuade Brazzel to continue selling; that it was "a custom" of the Murray Agency to continue to pay renewal commissions where policies sold by an agent were replaced.

■■ There is no pleading raising any of these matters as a ground for recovery, even if they can constitute a legally sustainable ground under the evidence. They were all objected to on this ground. By Rule 67, Texas Rules of Civil Procedure written pleadings are necessary to submission of issues. Matthews v. General Accident Fire and Life Assur. Corp., 161 Tex. 622, 343 S.W.2d 251, 254. The latter jury findings will not support a judgment, under the record.

Finally appellee insists none of the appellant's objections to the court's charge by which it raises many of its contentions may be considered. The argument is that Rule 272 was not complied with, in that objections dictated to the court reporter and subsequently transcribed as the Rule authorizes, were so made without "consent" of appellee's counsel as the Rule requires.

The position is untenable. Appellee's counsel was present before the Court and appellant's attorney began dictating his objections with the following preamble: "Now come defendants, and having been supplied a copy of the court's charge, now, in the presence of the court and counsel for all parties make their objections to the charge to the court reporter with the understanding and agreement" that the objections might be subsequently transcribed in the

manner provided by Rule 272. Appellee's counsel remained silent. The objections which are contained in 19 pages of the transcript to the charge of 35 issues were orally dictated without any protest from appellee.

After the objections were overruled appellee's counsel said, "We would like to note an objection to the form of defendant's exceptions to the charge on the basis that defendant's counsel has made such an extensive recitation of evidence, allegations and positions of the case that they have tended to conceal and submerge those objections · * * * as to allow plaintiff a fair opportunity to recognize the true nature of the objections." Appellants counsel then offered to have the objections typed in advance. This offer was also met with silence.

In this posture of the record we are unable to subscribe to appellee's urging that he did not "consent" to oral dictation. His "Silence gives consent," and he may not now urge he withheld it. By continuing mute during the proceedings appellee effectively fulfilled the consent requirement of the Rule. The complaint as to the form of the objections that they were "extensive, concealed and submerged" are not fairly susceptible of the interpretation that appellee did not consent to use of oral dictation. Neither is the quoted attack on the objections sustainable.

Since the case was tried and submitted on an erroneous theory, and has not been fully developed on a correct theory, it is considered equitable and in the interests of justice to remand. Waldo v. Galveston, H. & S. A. Ry. Co., Tex.Com.App., 50 S.W. 2d 274, 277; authorities cited, Pacific Coast Engineering Co., v. Trinity Const. Co., Tex.Civ.App., 410 S.W.2d 797, 801; Appellate Procedure in Texas (1964) Sec. 18.9.

It is not necessary to pass upon appellant's other points.

Reversed and remanded.