Homer **SUDDERTH** and wife, Shirley Sudderth, Appellants,

v.

Freddie **HOWARD** and wife, Billie L. Howard, Appellee.

No. 8843.

Court of Civil Appeals of Texas, Amarillo.

Dec. 27, 1977.

Rehearing Denied Jan. 23, 1978.

Huffaker & Green (Gerald Huffaker), Tohoka, for appellants.

Garner, Vickers & Purdom (Robert E. Garner), Lubbock, for appellee.

REYNOLDS, Justice.

Homer Sudderth and his wife, Shirley Sudderth, initiated this litigation to (1) cancel their deed purportedly conveying their homestead to Freddie Howard and his wife, Billie L. Howard, and (2) recover statutory usury penalties from the Howards for the alleged usurious transaction. Based on a single jury finding that the deed, coupled with an option to repurchase, was not intended as a sale, the trial court rendered judgment cancelling the deed, decreeing that the Howards recover from the Sudderths the amount of the recited purchase price with statutory interest, and denying the Sudderths any recovery on their claim of usury. We conclude that the affirmative aspects of the judgment are supported by the appellate record, which establishes that the Sudderths waived their ground of recovery for usury. Affirmed.

Homer Sudderth and Shirley Sudderth owned three hundred twenty acres of land situated in Yoakum County. One hundred twenty acres were encumbered and the remaining two hundred acres were designated as the homestead.[1] The Internal Revenue Service had posted a notice to sell the farm on 2 July 1975 to enforce the collection of a tax lien for almost $6,000 owed by the Sudderths for unpaid income taxes.

Through a banker to whom he applied for a loan, Homer Sudderth was introduced to Freddie Howard. After some discussion between Sudderth and Howard, an attorney was consulted. Thereafter, Sudderth and Howard executed on 27 June 1975 a written contract whereby Sudderth agreed to sell, and Howard agreed to buy, the 200 acres for $17,400 cash. Howard escrowed a sum approximating the amount of the tax lien, and Internal Revenue Service did not proceed with its sale.

On 25 July 1975, Homer Sudderth and his wife, Shirley Sudderth, executed a deed conveying their 200-acre homestead to Freddie Howard and his wife, Billie L. Howard, for a stated consideration of $17,400 cash, which was paid. On the same date, Homer Sudderth and Freddie Howard executed a written instrument granting Sudderth a first option, to be exercised by written notice given thirty days before 15 December 1975, to repurchase the property for a purchase price of $20,010 cash, plus any accrued taxes, on or before 15 December 1975.

Sudderth gave Howard written notice dated 11 November 1975 that he intended to exercise, and was ready to perform the terms of, the option to repurchase the 200 acres for the purchase price stated in the agreement. On 16 December 1975, Howard notified Sudderth in writing that his tenancy on the land had terminated and demanded delivery of possession on or before thirty days after that date.

Commenced 22 December 1975, this suit was filed by the Sudderths against the Howards. The Sudderths alleged that the 25 July 1975 transaction actually was a loan of $17,400 to them with an interest charge

---

1. The homestead designation is legally described as the East 200 acres out of the South one-half (S/2) of Section 2, Block D, John H. Gibson survey, Yoakum County, Texas, save and except all of the oil, gas and other minerals in, on, under and that may be produced from said property.

of $2,610, which totals the $20,010 repurchase price stated in the option, under the subterfuge of a sale and repurchase option to evade the homestead and usury laws. The Sudderths sought (1) cancellation of their deed on the theory that its purpose was to circumvent the homestead laws, and (2) forfeiture of the principal amount of the loan (the recited purchase price in the deed) and recovery of twice the amount of interest charged or contracted for, together with reasonable attorney's fees, later stipulated to be a maximum of $9,000 if the Sudderths prevailed, on the theory that the transaction constituted a usurious loan.

At the jury trial, the evidence was conflicting on the nature of the transaction. Sudderth testified that he entered into the transaction, not to sell his place but to consummate a loan after being told that it was the only way he could get a loan. He said that if he were willing to sell, he would have asked $60,000. There was evidence that $17,400 was the sum the Sudderths needed for their pressing debts and living expenses. It is recorded that Internal Revenue Service would not agree to postpone its sale if the contract contained a repurchase option; that Howard, wanting a fifteen percent "increase" or, according to the attorney, "interest" on his money, admitted the option was a part of the transaction from the beginning; and that the only condition on which the Sudderths would sign a deed was if there was an option to repurchase. Mrs. Sudderth stated that she never discussed selling the land, but a loan was discussed and, when she entered into the transaction, she was under the impression that they were getting a loan. She would not have signed the deed, she said, if she had known it was not a loan. There was testimony that the recited purchase price, which computes to $87 an acre, was not a fair price when compared to the $150 to $160 per acre worth assigned to the land by

Howard and the $250 to $500 per acre value given by other witnesses. Apparently, there was no discussion of the conditions usual to a transfer of ownership and possession, and the Sudderths planted a wheat crop on the land after the transaction was consummated.

Contrastively, there was testimony that Sudderth was told by an attorney that he could not borrow money on his homestead; and that Howard was not interested in loaning money, but was willing to buy the land for $17,400 which, according to Howard, was the amount Sudderth wanted for the land. The contract prepared a month before the deed and option made no mention of an option to repurchase. The deed was absolute on its face and the option to repurchase did not obligate Sudderth to exercise it. The attorney who prepared the instruments and closed the transaction testified that no one ever represented, suggested, implied or in any way inferred that the transaction was anything other than a bona fide sale. Although Mrs. Sudderth was under the impression that the transaction was a loan, she acknowledged that she knew she was signing a deed and not a mortgage, and that she knew the difference between them.

Only one issue was submitted to the jury and, in answer thereto, the jury found that the 25 July 1975 transaction was not intended as a sale of the land.[2] Accepting the verdict, the trial court rendered judgment setting aside the deed, granting the Howards recovery from the Sudderths of the sum of $17,400 with interest thereon at the rate of nine percent per annum, and denying all relief not specifically granted.

Although the court, in responding to the Sudderths' amended motion for new trial, was of the opinion that a new trial should be granted, the parties requested the court to, and the court did, overrule the amended motion for new trial so that questions of

2. The issue and the jury's answer are in the following form:

Do you find from a preponderance of the evidence that the true intent of the parties, Homer T. and Shirley Sudderth and Freddie and Billie Howard, was that the deed and op-

tion to repurchase was not a sale of the land in question on July 25, 1975?

Answer "It was a sale" OR "It was not a sale."

ANSWER: It was not a sale.

law could be determined on appeal. The Sudderths, advancing eleven points of error, occupy the position of appellants on this appeal, and the Howards, answering and asserting three cross-points, are appellees.

Considered first as a group are all of the Sudderths' points of error, except points four and six which are afterwards discussed. The crux of points one through three and point five is the contention that the Sudderths are entitled to judgment decreeing forfeiture of the $17,400 principal and recovery of twice the $2,610 interest charged or contracted for, plus attorney's fees, because the transaction was, as a matter of law, usurious. By the last five points, error is charged to the court in failing to submit two requested special issues and an instruction bearing on the subject of a pretended sale, and in overruling four objections made to the charge for the failure to submit a different shade of the issue submitted and the omission of issues on the factual questions of usury.

■ For a proper consideration of the points, it is necessary to notice the pleadings and the proceedings. The Sudderths' allegations of entitlement to cancellation of their deed are based on the declarations in Article 16, Section 50, of the Texas Constitution that "No mortgage, trust deed, or other lien on the homestead shall ever be valid * * * and all pretended sales of the homestead involving any condition of defeasance shall be void." If the instrument executed by the Sudderths in the form of a deed to their homestead was not intended to evince a sale, they had the right to bring suit to assert that it was in fact and in law a mortgage. *Cf. Rich v. Walker Smith Co.*, 57 S.W.2d 1098, 1099 (Tex. Comm'n App.1933, holding approved).

Allegations that the Sudderths were entitled to recover for usury are founded on Vernon's Ann.Civ.St. art. 5069–1.01, *et seq.* (1971). Section 1.02 of the article establishes that "(a) greater rate of interest than ten percent per annum unless otherwise authorized by law shall be deemed usurious." Section 1.06 gives the obligor a right of action against "(a)ny person who contracts for, charges or receives interest which is greater than the amount authorized." Recovery under the authorized action is, by virtue of subsection 1.06(1), twice the amount of interest contracted for, charged or received plus reasonable attorney's fees; however, if such interest is in excess of double the amount of interest allowed, subsection 1.06(2) provides for the additional penalty of forfeiture of all principal.

Obviously, then, the Sudderths pleaded two independent grounds of recovery: (1) the right to cancellation of the deed based on a constitutional ground; and (2) the right to recover penalties for usury based on a statutory ground. Although both grounds of recovery pleaded grew out of the same transaction, the grounds of recovery are separate from each other and, because either ground could be pursued to the exclusion of the other, neither ground of recovery is dependent on the other.

The record is clear that the parties agreed, with the consent of the court, that all objections to the court's charge could be made within ten days from the submission of the charge to the jury, but dated and filed in such a manner to appear that they were made before submission of the charge, and that no party would complain on appeal that the objections were not made before the case was presented to the jury. While the jury was deliberating, the parties, with the court's approval, extended the time to make objections for an additional fourteen days. The objections to the charge which the Sudderths now advance as error were first presented after the charge was read to the jury and the jury had returned its verdict in response thereto.

■ Rule 272 (1976) [3] mandates that in every instance, on penalty of waiver, objections to the court's charge shall be presented to the court in writing, or dictated to the court reporter in the presence of the court and opposing counsel, before the charge is read to the jury. A main purpose of the rule is for the court to have the benefit of

---

3. All rules cited are the Texas Rules of Civil Procedure.

counsels' objections to enable a proper charge to be submitted to the jury. Thus, an agreement of the parties, even with the consent and approval of the court, which calls for objections to be presented after the charge is read to the jury violates the rule, defeats one of its main purposes, and results in a waiver of the late objections. *Missouri Pacific Railroad Company v. Cross*, 501 S.W.2d 868, 872–73 (Tex.1973).

Furthermore, Rule 279 is specific that the failure to submit an issue upon which one relies for recovery shall not be a ground for reversal of the judgment unless its submission, in substantially correct wording, has been requested and tendered in writing. The rule is no less specific in declaring that upon appeal all independent grounds of recovery not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived. Here, the appellate record gives no indication that the Sudderths requested any issue concerning their independent ground of recovery for usury which, as they recognize in their waived objections to the court's charge, involved disputed factual issues.

Consequently, the Sudderths have waived all objections to the court's charge and their independent ground of recovery for usury. Points one through three, five, and seven through eleven are overruled.

Notwithstanding, the Sudderths submit by their fourth point that the court, in overruling their motion for judgment, made a finding which, as a matter of law, establishes the transaction as usurious. We cannot ascribe that effect to the court's language.

In its order overruling the Sudderths' motion for judgment on all of their pleaded causes, the court included this language:

> . . . and the court . . . finds, based upon the jury's verdict, that the true intent of the parties in the execution of the deed and Option to Repurchase was to secure the defendant, Freddie Howard, in the repayment of the sum

of $17,400.00, plus an advance in the amount of $2,610.00 to be paid on December 15, 1975, but that said transaction does not constitute usury under the laws of the State of Texas.

Here, irrespective of any interpretation that arguably may be placed on what the court "finds, based upon the jury's verdict," we may not, procedurally, treat it as a finding, *Murray v. Brazzel*, 438 S.W.2d 382, 384–85 (Tex.Civ.App.—Waco 1969, writ ref'd n. r. e.), for the power of a judge to make factual findings where none are submitted or requested in a jury trial does not extend to independent grounds of recovery. *Wichita Falls & Oklahoma Ry. Co. v. Pepper*, 134 Tex. 360, 135 S.W.2d 79, 85 (1940). Point four is overruled.

The Sudderths' sixth point is that the court erred in rendering judgment against them for $17,400 plus interest in the absence of any pleadings by the Howards for that sum and interest. We will not disturb the judgment on this point.

The Sudderths sought to cancel their deed on the theory that it actually evinced a mortgage, and not a sale, to secure a loan to them of $17,400. They persuaded the jury that the transaction was not intended as a sale, thereby securing a cancellation of their deed. It is axiomatic that he who seeks equity must do equity, and one seeking cancellation of an instrument cannot repudiate it and retain the benefits received therefrom; he should offer or tender a restoration and the court can accomplish that result by its judgment. *Texas Company v. State*, 154 Tex. 494, 281 S.W.2d 83, 91 (1955). By its judgment rendered here, the court did so. The sixth point is overruled.

By the second of their three cross-points, the Howards contend that the Sudderths are estopped by the testimony which is consistent with the written agreements to claim the deed was a mortgage. What the constitution declares void cannot be made valid by an agreement between the primary parties and, if the land were in law and in fact the Sudderths' homestead,

the execution of the instruments will not estop the Sudderths from asserting their homestead rights in this litigation, *Rich v. Walker Smith Co., supra*, at 1099, and no estoppel can arise in favor of the Howards based on declarations of the Sudderths, made orally or in writing, contrary to the fact. *Texas Land & Loan Co. v. Blalock*, 76 Tex. 85, 13 S.W. 12, 13 (1890). The second cross-point is overruled.

With their first cross-point, the Howards attack the jury's finding for lack of any evidence and factually sufficient evidence to support it. The evidence, à summary of which is stated above, has been reviewed under the prescribed standards. There is, of course, some evidence in support of the finding and we cannot say, with due regard for the jury's prerogatives, that the evidence in support of the finding is so weak, or the contrary evidence is so overwhelming, that the finding should be set aside. The first cross-point is overruled.

The third cross-point is neither briefed nor argued. It is, therefore, waived. *Frazier v. Wynn*, 492 S.W.2d 54, 61 (Tex.Civ.App.—Amarillo 1973, writ ref'd n. r. e.).

The judgment is affirmed.