Dennis FRANCIS, Appellant,

v.

G. Ward BEAUDRY, Appellee.

No. 05–86–00887–CV.

Court of Appeals of Texas, Dallas.

June 5, 1987.

Rehearing Denied July 23, 1987.

Patrick Shaw, Dallas, for appellant.

Catherine Spicer-Tolliver, Dallas, for appellee.

Before DEVANY, BAKER, and McCRAW, JJ.

DEVANY, Justice.

This is an appeal from a suit brought by G. Ward Beaudry, Successor Administrator of the Estate of James L. Reeves, Deceased, against Dennis Francis and Dave Edwards, the remaining stockholders and directors of Columbia Oilfield Equipment, Inc., a corporation in which James L. Reeves was the president and third stockholder. Beaudry filed a Motion to Show Cause in the Probate Court on September 19, 1985, requesting the court to order Edwards and Francis to appear and to show cause why they should not be required to pay Beaudry "all sums to which James L. Reeves as president and holder of one-third of the stock of Columbia Oilfield Equipment, Inc., was entitled as of the date of his death...." Beaudry alleged that he was entitled to recover the sum of $124,-279.05 due the estate because of Reeves' interest in Columbia. Neither Edwards nor Francis filed any responsive pleading to the Motion, but both appeared at the hearing held February 12, 1986. After the hearing, the court entered judgment against Edwards and Francis, jointly and severally, in the amount of $49,252.14, plus interest and attorney's fees. Francis appeals, claiming

that the trial court erred in entering judgment against him because (1) Beaudry's cause of action, if any, was in the nature of a shareholder's derivative suit, and Beaudry failed to comply with the requirements of article 5.14 of the Texas Business Corporations Act; (2) the trial court lacked subject matter jurisdiction over this cause; (3) Beaudry may not, as a matter of law, recover as an asset of the Estate of James L. Reeves, deceased, the value of one-third of the corporation as of the date of the death of Reeves; (4) there is insufficient evidence to support the judgment; (5) the alter ego theory, as a matter of law, is not applicable to the case; and (6) the decedent, Reeves, was guilty of wrongdoing against the corporation and he who seeks equity must have clean hands. Except for a duplicate award of one item of damages, we find no merit in these arguments. We reform the judgment of the trial court to correct for the duplication of damages and, as reformed, we affirm.

In order to properly address Francis' arguments, we must first review the factual background of this case. In September, 1981, James L. Reeves, Dennis Francis and Dave Edwards secured a charter for a corporation to sell oilfield equipment in the name of Columbia Oilfield Equipment, Inc. The three men were to be equal shareholders in the corporation. Standard incorporation documents were prepared and executed, and certificates of stock in equal amounts were issued to Reeves, Francis and Edwards as shareholders. However, no contributions were made to the corporation by any of the shareholders in exchange for the stock as is required under Texas law before the corporation may commence business. TEX.BUS.CORP.ACT ANN. art. 3.05 (Vernon 1980). Nevertheless, business activities were conducted by the three men in the name of the corporation. From the time of incorporation until his death in May of 1982, James L. Reeves acted as President of Columbia, and handled most of the management functions for the business activities.

After Reeves' death, Francis and Edwards proceeded to "wind up" the business. While the two men were settling Columbia's affairs, and paying its creditors, each personally received payments from the sale of pumping units, which were assets of the business, in the amounts of $2,500.00 and $6,000.00. Both Francis and Edwards bought cars in their own names with funds from the business, or reimbursed themselves from business funds, after Reeves' death. In the first half of 1984, Edwards and Francis liquidated and distributed all remaining assets of the business to themselves in the amounts of $44,177.93 to Francis and $47,192.73 to Edwards. The corporate shell was never formally dissolved.

G. Ward Beaudry qualified as Successor Administrator of the Estate of James L. Reeves and brought this action against Francis and Edwards to recover "Reeves" one-third interest in Columbia Oilfield Equipment, Inc. on the date of his death." The Motion to Show Cause listed certain assets as of the date of Reeves' death and demanded payment of one-third thereof. Neither Francis nor Edwards filed any pleadings in response to the Motion to Show Cause. At trial, Beaudry moved for, and was granted, a trial amendment, alleging that Francis and Edwards continued to operate the corporation for their own benefit after Reeves' death. The amendment further stated:

> that the identity of the alleged corporation and [Francis and Edwards] are in substance one and the same; that the alleged corporation was the alter ego of [Francis and Edwards], who were and are utilizing the business solely as a conduit for the performance of their individual business, and as a device to cause harm or prejudice to those dealing with it.

In support of this argument, Beaudry asserted that Francis and Edwards were owners of two-thirds of all the stock in Columbia, and that they comprised the board of directors of Columbia and served as its officers. Beaudry further alleged that Francis and Edwards had ignored the separate existence of Columbia Oilfield Equipment, Inc., in many ways by failing to conduct regular meetings of shareholders

and directors, by failing to obtain directors' written consent or approval of corporate actions, and by failing to maintain corporate records other than the original records of incorporation. Beaudry asserted that, by use of the corporation, Francis and Edwards were able to obtain possession of all the assets of the business, including cash, accounts payable, personalty, and insurance proceeds. Beaudry argued that Francis and Edwards had used these assets for payment of salaries, automobile expenses, and other items for their personal benefit, and that the Estate had thus been deprived of its undivided one-third interest in the business.

The trial court entered judgment in favor of Beaudry and, at the request of Francis and Edwards, made findings of fact and conclusions of law. The court found that, at the date of his death, Reeves owned an undivided one-third interest in Columbia, and that the value of that interest at the date of Reeves' death was $49,252.14. The court also found that, after the death of Reeves, Francis and Edwards continued to operate Columbia for their own benefit, that they wound up the business and distributed all net assets to themselves after Reeves' death, and that they manipulated the corporate form of Columbia to serve their personal interests. The court also found Columbia was the alter ego of Francis and Edwards. The court held that Beaudry, as the successor administrator of Reeves' estate, had been damaged by Francis' and Edwards' actions, and that Francis and Edwards were liable to the estate for the amount of $49,252.14, along with attorneys' fees and costs.

In his first point of error, Francis argues that the trial court erred by entering judgment against him because Beaudry's cause of action was in the nature of a stockholder's derivative suit and Beaudry failed to comply with requirements for such suits under article 5.14 of the Texas Business Corporations Act. In his third point of error, Francis contends that the trial court erred by entering judgment against him because, as a matter of law, Beaudry could not recover the value of one-third of the corporation as of the date of Reeves' death

as an asset of the estate. In his fifth point of error, Francis argues that the trial court erred in entering judgment against him because the alter ego theory, as a matter of law, is not applicable to the case. Because these arguments are related, we will address them together.

■■■ The gist of Francis' complaint is that, since assets of a corporation are involved, the trial court erred in allowing Beaudry to pierce the corporate veil and recover directly against Francis and Edwards as shareholders and directors. Francis cites the well-known principle that generally a stockholder may not sue a director or officer for a breach of duty to the corporation. Since the primary injury in such a suit occurs to the corporation, the right to recover belongs to the corporation. *Commonwealth of Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216, *cert. denied*, 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943). While we agree with this basic principle, there are numerous exceptions to it. While the corporate form normally insulates shareholders, officers, and directors from liability for corporate obligations, when these individuals abuse the corporate privilege, the courts will disregard the corporate fiction and hold them individually liable. *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex.1986). In *Castleberry*, the Texas Supreme Court discussed and clarified the various ways in which the corporate fiction may be disregarded to impose personal liability on shareholders. Francis argues, however, that Beaudry had to comply with the requirements of article 5.14 of the Texas Business Corporations Act and bring this action in the form of a stockholder's derivative suit. We disagree. Beaudry pled in the trial amendment that the corporation was the alter ego of Francis and Edwards and that the two men had used the corporate form after Reeves' death for their own personal benefit. Beaudry cited a number of ways in which the men had disregarded the corporate formalities. The evidence at trial supported these pleadings: both men had bought cars in their own names with corporate funds, and had liquidated and

distributed the corporate assets to themselves. Francis and Edwards also failed to hold regular stockholders' and directors' meetings or otherwise observe the corporate formalities. We hold that the evidence was sufficient to pierce the corporate veil and assess personal liability against Francis; therefore, it was not necessary for Beaudry to bring the action in the form of a shareholder's derivative suit. As the *Castleberry* court stated, "[a]lter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." 721 S.W.2d at 272. The rationale behind the alter ego theory is that, "if the shareholders themselves disregard the separation of the corporate enterprise, the law will also disregard it so far as necessary to protect individual and corporate creditors." 721 S.W.2d at 272, *quoting* Ballantine, *Corporations* § 123 at 294 (1946). We hold that the facts in the instant case support a cause of action based on the alter ego theory against the individual shareholders, Francis and Edwards.

■ We have also found a second theory which supports Beaudry's right to bring his cause of action directly against Francis and Edwards. This theory is known as the "denuding the corporation" theory, and may be found in *World Broadcasting System, Inc. v. Bass,* 160 Tex. 261, 328 S.W.2d 863 (1959). *World Broadcasting System* was recently cited with approval by the Texas Supreme Court in *Castleberry,* 721 S.W.2d at 271 n. 1. In *World Broadcasting System,* the Texas Supreme Court held that where stockholders of a corporation sold all the assets of the corporation and retained the proceeds for themselves individually, the corporation was "denuded" of its assets and the stockholders were liable to the creditors of the corporation to the extent of the funds they received. 328 S.W.2d at 864. This theory also supports piercing the corporate veil to enable Beaudry to recover the one-third share of the corporate assets which properly belong to Reeves' estate.

■ Francis argues that, since the corporation was never formally dissolved, Reeves' estate may not recover the corporation's assets. We disagree. *World Broadcasting System* held that the corporation's creditors could follow the assets of the denuded corporation into the hands of the shareholders even though the corporation was never formally dissolved. 328 S.W.2d at 866. As that court stated, "[t]he corporation was stripped of its property as completely and effectively as if it had been dissolved and its assets appropriated by respondents." 328 S.W.2d at 866. Therefore, we hold that Reeves' estate may recover its share of the value of the business from the other two owners even though the corporate shell was never formally dissolved.

■ Francis also argues that the alter ego theory, as a matter of law, does not apply to this case because Beaudry did not allege that the corporation was used by the stockholders as a sham. Francis argues that the alter ego theory requires that some showing be made that the corporation was used by the stockholder as a sham or device in the transaction in question, and that equity should look through that sham to impose liability on the stockholder. In support of this argument, Francis cites *State v. Nevitt,* 595 S.W.2d 140 (Tex.Civ. App.—Dallas 1980, writ ref'd n.r.e.). We are not persuaded by this argument. In *Castleberry,* the Texas Supreme Court made it quite clear that the theory based upon "a sham to perpetrate a fraud," which also provides a means of disregarding the corporate fiction, is entirely separate from the alter ego theory. 721 S.W.2d at 272. Furthermore, as the court stated in *Castleberry:*

> Because disregarding the corporate fiction is an equitable doctrine, Texas takes a flexible fact-specific approach focusing on equity. [citations omitted] ... For example, in *First Nat. Bank in Canyon v. Gamble* [134 Tex. 112, 132 S.W.2d 100 (1939)], this court held that we would disregard the corporate fiction when the "facts are such that adherence to the fiction would promote injustice and lead

to an inequitable result." 132 S.W.2d at 105. More recently, in *Gentry v. Credit Plan Corp. of Houston* [528 S.W.2d 571 (1975)], we again took an equitable approach, holding that the purpose in disregarding the corporate fiction "is to prevent use of the corporate entity as a cloak for fraud or illegality or to work an injustice, *and that purpose should not be thwarted by adherence to any particular theory of liability.*" 528 S.W.2d at 575.

721 S.W.2d at 273. (Emphasis added.) In accordance with this equitable approach, we hold that the trial court did not err in rendering judgment against Francis and Edwards and in piercing the corporate veil to hold them liable to Reeves' estate for Reeves' one-third share of the business assets. To allow the surviving shareholders to strip the corporation of its assets without accounting to Reeves' estate for its share of the value of the corporation would be a great injustice. Beaudry pled and proved sufficient acts by Francis and Edwards to prove that the two individuals had completely disregarded the corporate entity. Therefore, the evidence was sufficient to support the trial court's holding that the alter ego theory applied. Francis' first, third, and fifth points of error are overruled.

█ In his second point of error, Francis contends that the trial court erred in entering judgment against him for the reason that the probate court did not have subject-matter jurisdiction of this cause. The primary basis for this argument is Francis' contention that the suit was actually a shareholder's derivative action. We have already rejected this argument. Therefore, we must simply determine whether the probate court has jurisdiction over a cause of action by a shareholder's estate against the other shareholders and directors of a corporation who have plundered the corporate assets for themselves. We conclude that the probate court does have jurisdiction over such a suit. Section 5(d) of the Texas Probate Code states, in pertinent part, that "[a]ll courts exercising original probate jurisdiction shall have the power to hear all matters incident to an estate." TEX.

PROB.CODE ANN. § 5(d) (Vernon 1980). Section 5A(b) of the Probate Code defines "incident to an estate" as including "... all claims by ... an estate ... and generally all matters relating to the settlement, partition, and distribution of estates of deceased persons." TEX.PROB.CODE ANN. § 5A(b) (Vernon Supp.1987). Claims, according to Probate Code section 3(c), include "debts due [decedents] estates." TEX.PROB.CODE ANN. § 3(c) (Vernon 1980). Therefore, an estate's claim of a debt due to the decedent is a matter incident to an estate. Francis argues, however, that *Seay v. Hall*, 677 S.W.2d 19 (Tex.1984) precludes the probate court from having jurisdiction over the claims in the instant case. We disagree. *Seay* simply held that wrongful death and survival actions are not "claims by or against an estate." 677 S.W.2d at 24–25. To the contrary, the "[d]etermination of decedent's right to probate assets necessarily falls within the scope of being an action 'incident to an estate.'" *English v. Cobb*, 593 S.W.2d 674, 676 (Tex.1979). When Reeves died, his estate became the owner of his interest in the business, and that interest became a probate asset. When Francis and Edwards denuded the corporation of its assets, the estate then had a right to follow the assets. *See Demmer v. Stroude*, 40 F.Supp. 795 (N.D.Tex.1941) (when an estate is in process of probation, the authority to sue for its assets rests in the administrator or executor). Furthermore, after the supreme court's decision in *Seay*, the Texas Legislature amended section 5A(b) of the Probate Code to give the probate courts jurisdiction "in actions by or against a personal representative [of an estate]." TEX.PROB.CODE ANN. § 5A(b) (Vernon Supp.1987). Therefore, we conclude that the probate court did have subject matter jurisdiction in the instant case. Francis' second point of error is overruled.

█ Before addressing the next point of error, we are compelled to comment on the manner in which this case was tried in order that future litigants will not be led astray by the procedure used by Beaudry in the court below. While the probate

court did have subject matter jurisdiction to consider Beaudry's claim on behalf of the estate, the proper procedure in bringing the suit would have been to file an original petition, rather than a motion to show cause. We note, however, that the trial court did conduct the proceedings as though the motion to show cause was in fact an original petition. Furthermore, since neither Edwards nor Francis objected to the procedure, and since Francis has raised no point of error concerning the procedure, any impropriety in the use of the motion to show cause, or the use of the show cause order, was waived. *See Sherman v. Provident American Insurance Company*, 421 S.W.2d 652, 654 (Tex.1967); *Rose v. Burton*, 614 S.W.2d 651, 652 (Tex. Civ.App.—Texarkana 1981, writ ref'd n.r. e.).

In his fourth point of error, Francis asserts that the trial court erred in entering judgment against him in the amount of $49,252.14 for the reason that there is insufficient evidence to support the judgment. We disagree. We have already discussed the evidence to support holding Francis individually liable to the estate, and we conclude it is sufficient. Francis also argues, however, that the evidence is insufficient to support the judgment because the record shows that the insurance benefits paid to the corporation upon Reeves' death were not actually received by the corporation until three months after Reeves' death. Francis bases this argument on the fact that the suit was brought for Reeves' share of the corporation *as of the date of his death.* We are not persuaded by this argument. The proceeds of an insurance policy become due on the death of the insured to the person designated as beneficiary. TEX.INS.CODE ANN. art. 3.48 (Vernon 1981). The beneficiary of a life insurance policy has an interest in the policy in the nature of an expectancy which matures into a vested right upon the death of the insured. *McAllen State Bank v. Texas Bank & Trust Co.*, 433 S.W.2d 167, 170 (Tex.1968). The corporation's interest in the life insurance proceeds, therefore, was vested upon Reeves' death, and Reeves' estate was entitled to recover its one-third

share of the proceeds as of that date, even though the check for the proceeds was not actually received until three months after Reeves' death. Finally, Francis argues that the trial court made an error in its calculation of the amount due to Reeves because it included the sum of $9,213.76 twice in its calculations of the total net assets. We agree the trial court erred in this respect. The sum appears twice in the exhibits, as both an account receivable and as a cash receipt, and incorrectly increased the value of the corporation as of the date of Reeves' death by $9,213.76. Reeves' one-third share was, therefore, also incorrectly overvalued by $3,071.25. Therefore, we reduce the judgment by $3,071.25 to correct this error. Francis' fourth point of error is granted in part, and overruled in part.

In his sixth point of error, Francis claims that the trial court erred by entering judgment against him because Reeves was guilty of wrongdoing by taking money out of the business and, therefore, if Reeves seeks equity, he must have clean hands. The testimony at trial indicated that Reeves had borrowed some money from the business and that he had not repaid this money before he died. Francis argues that Reeves' wrongdoing should prevent the estate from recovering the one-third of the business. In support of this argument, Francis cites *Village Medical Center, Ltd. v. Apolzon*, 619 S.W.2d 188 (Tex.Civ.App.— Houston [1st Dist.] 1981, no writ); *Sudderth v. Howard*, 560 S.W.2d 511 (Tex.Civ. App.—Amarillo 1977, writ ref'd n.r.e.); *Lovelace v. Bandera Cemetery Association*, 545 S.W.2d 194 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.); and *W.K. Ewing Co. v. Krueger*, 152 S.W.2d 488 (Tex.Civ.App.—San Antonio 1941, writ ref'd w.o.m.).

We agree with the basic principle that "he who seeks equity must do equity...." *Sudderth*, 560 S.W.2d at 516. However, the defense that Francis is raising is that of offset: since Reeves owed money to the business, that amount should be offset against his estate's recovery. Offset is a matter of affirmative defense

which must be pled and proved. TEX.R. CIV.P. 94; *Matrix, Inc. v. Provident American Insurance Co.*, 658 S.W.2d 665, 667 (Tex.App.—Dallas 1983, no writ); *Southwestern Bell Telephone Co. v. Gravitt*, 551 S.W.2d 421, 428 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.). Francis did not file any response to Beaudry's Motion to Show Cause, and, therefore, did not plead offset or any other affirmative defense. Accordingly, he has waived his right to complain on appeal. *Matrix, Inc.*, 658 S.W.2d at 667. Francis' sixth point of error is overruled.

The judgment of the trial court is reformed, and as reformed, affirmed.