

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00219-CV

---

JOEL HART, ADVANCE POWER LLC, AND
HYDRO-STAR ENERGY LLC, APPELLANTS

V.

CURT BESSELMAN, APPELLEE

On Appeal from the 47th District Court
Potter County, Texas
Trial Court No. 110942-A-CV, Honorable Dee Johnson, Presiding

June 2, 2025

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Through its final judgment, the trial court rescinded a 2019 mediated settlement agreement (MSA) executed between Joel Hart, Advance Power LLC, Hydro-Star Energy, LLC, Shelby Walton, and Curt Besselman. The accord purportedly resolved Besselman's claims against the other signatories (collectively referred to as Hart) involving services he provided. Those services related to the alleged pursuit of wind turbine installation opportunities in Texas and the Virgin Islands. Through his fourth amended petition, Besselman "sued [the Hart defendants] under alternative theories of Breach of Contract

and fraud" and "prayed for rescission of the MSA on the basis of fraud and material breach allowing recovery under a theory of quantum meruit." After conducting a bench trial, the trial court granted Besselman the relief he sought. It rescinded the MSA and awarded him damages under quantum meruit. Hart and the other MSA signatories appealed, asserting 10 issues. We address only those dispositive of the appeal and, in doing so, reverse.

### Issue One

Hart's initial issue is multi-faceted, though each component concerns rescission of the MSA. Allegedly, Besselman failed to "plead and prove" 1) "the threshold requirement of fraud or material breach," 2) the inadequacy of remedies at law, and 3) the provision of "timely notice of his intent to rescind" coupled with the tender of benefits received under the MSA.

Preliminarily, we note that rescission is an equitable remedy. *Omega Energy Corp. v. Gulf States Petroleum Corp*., No. 13-03-275-CV, 2005 Tex. App. LEXIS 3191, at *9 (Tex. App.—Corpus Christi Apr. 28, 2005, pet. denied) (mem. op.). A harsh and generally disfavored remedy, it will not be granted when other relief is available unless the relative equities "clearly favor" it. *Holt v. Robertson*, No. 07-06-0220-CV, 2008 Tex. App. LEXIS 3735, at *15 (Tex. App.—Amarillo May 21, 2008, pet. denied) (mem. op.). It is further worth mentioning that agreements of the ilk before us, i.e., settlement agreements, find favor in Texas public policy. *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 280 (Tex. 1995). And, combining these two principles of the law and policy urge the exercise of caution when weighing whether to nullify a settlement through the disfavored remedy of rescission. Finally, the burden to sway the court and to prove the equities clearly favor such rescission lies with the claimant, and that burden includes establishing the absence

2

of an adequate legal remedy. *Omega Energy Corp.*, 2005 Tex. App. LEXIS 3191, at *9; *Davis v. Estridge*, 85 S.W.3d 308, 310 n.2 (Tex. App.—Tyler 2001, pet. denied). That said, we turn to the merits of Hart's arguments.

The first contention considered is that of timely notice and tender or return of previously received benefits. According to Hart, Besselman proved neither. We begin our analysis with the words of our Supreme Court. "At common law, rescission . . . generally requires notice and tender; that is, a plaintiff seeking to rescind a contract must give timely notice to the defendant that the contract is being rescinded and either return or offer to return the property he has received and the value of any benefit he may have derived from its possession." *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 824 (Tex. 2012); *see also Silberstein v. Lewis*, No. 01-17-00294-CV, 2018 Tex. App. LEXIS 10648, at *8 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, no pet.) (mem. op.) (reiterating those elements); *Republic Capital Grp., LLC v. Roberts*, No. 03-17-00481-CV, 2018 Tex. App. LEXIS 8703, at *7 (Tex. App.—Austin Oct. 25, 2018, no pet.) (mem. op.) (same); *David McDavid Pontiac, Inc. v. Nix*, 681 S.W.2d 831, 836 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) (quoting *Mathis Equipment Co. v. Rosson*, 386 S.W.2d 854, 869-70 (Tex. Civ. App.—Corpus Christi 1964, writ ref'd n.r.e.)) (same); *Sudderth v. Howard*, 560 S.W.2d 511, 516 (Tex. App.—Amarillo 1977 writ ref'd n.r.e.) (same). Moreover, the claimant's performance of these two acts must precede a request of rescission. *Beck v. Humphreys*, 160 S.W.2d 85, 86 (Tex. Civ. App.—San Antonio 1942, no writ) (stating that an "offer to make restitution must precede a request for rescission and cancellation"). And, proving he so performed them is, like the other aspects of establishing grounds for rescission, the burden of that claimant. *Silberstein*, 2018 Tex. App. LEXIS 10648, at *8.

3

Our review of the evidentiary record uncovered no evidence of Besselman's providing to Hart notice of the former's intent to rescind the MSA before seeking that relief via an amended petition. Indeed, Besselman neither argued that he provided such notice nor cited us to evidence of same. Similarly missing is evidence of Besselman's returning or offering to return the $5,800 paid him under the MSA before suing for rescission. At best, mention was made during trial of only crediting or offsetting the sum against any award of damages received if the MSA were rescinded. And, though a trial court may accomplish the return of benefits received via its judgment granting rescission, *Sudderth*, 560 S.W.2d at 516, no evidence appears of record of Besselman so offering before suing to rescind. Notice and the offer to return benefits being elemental to recovery, the absence of evidence establishing both occurred pretermitted rescission of the MSA. *See Republic Capital*, 2018 Tex. App. LEXIS 8703, at *8-9 (holding that summary judgment was not subject to denial because the plaintiffs, in response to the motion, simply said they "are willing to restore any benefits gained from the Settlement Agreement" and "[s]uch an assertion unsupported by evidence of any attempt or even intention to do so does not raise a fact issue as to the challenged element of rescission").

Next, we address another of the prerequisites to rescission. It concerns the existence of an adequate legal remedy. To reiterate, rescission is an equitable remedy that "is not available where there is an adequate remedy at law." *Credit Suisse AG v. Claymore Holdings, LLC*, 610 S.W.3d 808, 819 (Tex. 2020). And, though the decision whether to grant equitable relief generally is discretionary, "[w]hether an adequate legal remedy exists on a given set of facts is not itself a factual determination." *Id.* at 819. Rather, "[i]t is either a question of law or an application-of-law-to-fact question." *Id.* And, "[i]n either case, review is de novo." *Id.* "Thus, while the nature and contours of an

4

equitable award are within trial court discretion, the predicate legal question of whether an adequate remedy is available on a given set of facts should typically be reviewed de novo." *Id.*

We further note authority describing an adequate remedy at law as one that is "'complete, practical, and efficient to the prompt administration of justice as is equitable relief.'" *Cheniere Energy, Inc. v. Parallax Enters., LLC*, 585 S.W.3d 70, 76 (Tex. App.—Houston [14th Dist.] 2019, pet. dism'd) (quoting *Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd.,* 527 S.W.3d 579 (Tex. App.—Houston [14th Dist.] 2017, no pet.)); *Blackthorne v. Bellush*, 61 S.W.3d 439, 444 (Tex. App.—San Antonio July 5, 2001, no pet.). To that end, a party can rarely establish an irreparable injury and an inadequate legal remedy when damages for breach of contract are available. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (involving a temporary injunction); *Omega Energy*, 2005 Tex. App. LEXIS 319, at *10 (involving rescission); *see also SHA, LLC v. Northwest Tex. Healthcare Sys.*, No. 07-13-00320-CV, 2014 Tex. App. LEXIS 38, at *3 (Tex. App.—Amarillo Jan. 3, 2014, no pet.) (mem. op.) (stating that "a legal remedy is inadequate if, among other things, damages are difficult to calculate or their award may come too late"). This observation mirrors the general principle that if damages suffice to compensate the plaintiff for the wrong committed by the defendant and if the damages are subject to measurement by an ascertainable pecuniary standard, then an adequate remedy at law exists for purposes of assessing the availability of equitable relief. *Kazi v. Sohail*, No. 05-21-00432-CV, 2022 Tex. App. LEXIS 455, at *21-22 (Tex. App.—Dallas Jan. 24, 2022, pet. denied) (mem. op.); *accord Cheniere Energy, Inc.*, 585 S.W.3d at 76-77 (stating that "[m]oney damages are generally adequate to compensate an injured party unless the loss

5

at issue is considered 'legally "unique" or irreplaceable'"). And, that is the impediment before us now.

One must remember that Besselman sought rescission based upon a breach of the MSA and purported fraud utilized to induce him into executing that document. And, though he did not address in his appellate brief the existence, or lack thereof, of an adequate legal remedy redressing that breach and fraud, he acknowledged therein that his loss was "financial" and his sole "remedy" was "damages." More importantly, the trial court actually engaged in the calculation of such damages in two ways.

The first encompassed the damages suffered by Hart's breach of the MSA. They reflected the sums payable to Besselman had Hart performed the contract, that damage being "$2,749.90" plus "$335" or $3,084.90. The second encompassed an award under quantum meruit upon rescinding the MSA and after offsetting the $5,800 previously paid Besselman; it approximated $372,680. The trial court rejected the former as "inadequate," without explanation. Admittedly, $3,084 would be inadequate when compared to $372,680 if the test were to award the greatest possible sum. But we know of no authority so explaining which legal remedies are accurate and which are not. Instead, components of the assessment include whether damages are susceptible to calculation, and the trial court's own calculations of same proved that to be true.

We further observe that the trial court's calculation of damages relating to the purported breach of contract reflected the benefit of the bargain Besselman struck under the MSA. Receiving that benefit is a lawful measure of damages in both breached contract and fraud cases. *See Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007) (stating that Texas recognizes two measures of direct damages for fraud, one being out-of-pocket and the other benefit of the bargain); *First Cash, Ltd. v. JQ-Parkdale, LLC*,

6

538 S.W.3d 189, 201 (Tex. App.—Corpus Christi 2018, no pet.) (recognizing that the usual measure of damages for a breach contract "is the expectancy or benefit-of-the-bargain measure"); *Domingo v. Skidmore*, No. 07-09-0392-CV, 2011 Tex. App. LEXIS 7360, at *16-17 (Tex. App.—Amarillo Aug. 31, 2011, pet. denied) (mem. op.) (stating that damages for a breached contract protect three interests: a restitution interest, a reliance interest, and an expectation interest while the most common interest protected is the expectation or benefit of the bargain interest). And, being a legally recognized and applicable measure of damages goes far in saying that Besselman's recovery of same would be complete, practical, and efficient to the prompt administration of justice when analyzing the adequacy of a legal remedy.

Indeed, one cannot ignore the trial court's own finding that Besselman opted to take less rather than risk more when signing the MSA. Appearing as finding of fact 19, the court said that he "had some concern about the complete accuracy of the information conveyed by Coppedge . . .," Hart's attorney, concerning the dormancy of a Virgin Island project. However, his execution "of the MSA as written was not inconsistent with the representations of dormancy by Defendants . . . in view of hurricane damage, Covid and WAPA financial struggles." So, he settled because he "sought a written acknowledgement that he was part of the [Virgin Island] project while allowing for a 20% chance the project was or would become active and provide compensation." In other words, he questioned the veracity of those with whom he dealt. Nevertheless, factors other than their statement supported the likelihood that the Virgin Island project was dormant. He also assigned an 80% chance to the prospect that the project would neither become active nor provide compensation. So, to hedge that likelihood, he opted to monetize the 20% chance of the project's success through settlement and a mutually

7

agreed upon equation.[1]  That is the purpose of settlement . . . to dispense with likelihoods in exchange for relative certainties.  That the certainties sought were not as beneficial as desired is not basis to grant the disfavored remedy of rescission and thwart public policy favoring settlement when the measure of damages encountered is subject to calculation. Our sister court recognized as much years ago through its statement that "[t]he remedy of rescission and cancellation is an equitable one and a party cannot avoid his contract on the ground that he received less in value than he supposed . . . ."  *Chenault v. County of Shelby*, 320 S.W.2d 431, 433 (Tex. Civ. App.—Austin 1959, writ ref'd n.r.e.).  And, this seems especially so here where the complainant had qualms about the truthfulness of what was told him; despite those qualms, he nonetheless opted to settle.

In exercising our authority to review de novo the element of an existing adequate legal remedy, we conclude that one existed.  Existing, it pretermitted the equitable award of rescission.  Consequently, we reverse the trial court's judgment and render judgment denying Curt Besselman recovery against Joel Hart, Advance Power LLC, Hydro-Star Energy, LLC, and Shelby Walton.

Brian Quinn<br>
Chief Justice

---

[1] The equation consisted of a $5,800 immediate payment coupled with the prospect of "0.5% of the gross revenue from any funds received between January 1, 2019 and December 31, 2022 by any Joel Hart Wind Company (regardless of legal name) from any project located on the United States Virgin Islands."