**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**John E. PALMER, Jr., et al., Defendants Third-Party Plaintiffs-Appellants,**

**v.**

**LAMAR LIFE INSURANCE COMPANY,**
**Third-Party Defendant Appellee.**

**No. 76–3343.**

United States Court of Appeals,
Fifth Circuit.

Aug. 14, 1978.

George H. Kolb, Daniel J. Sheehan, Jr., Dallas, Tex., for John E. Palmer, Jr., et al.

Michael P. Carnes, U.S. Atty., Martha Joe Stroud, Asst. U.S. Atty., Dallas, Tex., for the U.S.

Dwight Marshall Simmons, William D. Sims, Jr., Dallas, Tex., for Lamar Life Ins. Co.

Before THORNBERRY, RONEY and HILL, Circuit Judges.

PER CURIAM:

The sole issue on this appeal is whether the guarantors of a second mortgage can attack for fraud the foreclosure sale held by the primary mortgagee, where the sale leaves nothing to pay the secondary mortgage they had guaranteed. We hold that the guarantors lack standing to attack the foreclosure.

The facts of this case involve two separate loans and several related businesses and individuals. The first loan was made in 1969 by Lamar Life Insurance Company to New Buena Vista, Inc. and Hotel Buena Vista, Inc. The loan was in the approximate amount of $1,100,000 and was secured by a first lien on various properties owned by the Buena Vista companies.

In 1969, a second loan of $500,000 was made to these companies by the Small Business Administration. The SBA loan was personally guaranteed by James Love, a major stockholder in the Buena Vista companies at that time. It was also secured by a lien on part of the Buena Vista property that was inferior to Lamar Life's lien.

Sometime thereafter, Western & Southern Development Co. purchased all of the stock of the Buena Vista companies. The sole shareholders of Western & Southern were John Palmer, Jr., and Warren Taylor, the appellants herein. In connection with this purchase, the SBA agreed to cancel Love's written guaranty in exchange for the written personal guaranties of Palmer and Taylor.

On February 3, 1972, Lamar Life foreclosed its lien on the Buena Vista properties and bid in the properties at the trustee's sale for a purchase price of approximately $800,000. At the time of the sale, the amount due on the Lamar Life note was approximately $1,200,000. Accordingly, the proceeds of the sale were not sufficient to pay any part of the SBA indebtedness. Since the SBA lien was inferior to Lamar Life's lien, the SBA lien was canceled by the foreclosure, and the SBA sued Palmer and Taylor on their personal guarantees.

Palmer and Taylor brought a third-party action against Lamar Life, alleging that they sustained or would sustain a loss or damage on their guaranty of the SBA loan because Lamar Life conducted a wrongful and tortious foreclosure sale of the properties which secured the SBA debt. The district court granted Lamar Life's motion for summary judgment on two grounds: Palmer and Taylor lacked standing to complain about the foreclosure sale, and alternatively, there were no genuine issues of material fact presented by their third-party actions. The SBA suit against Palmer and Taylor, not involved in this appeal, resulted in a jury verdict against Palmer and Taylor for the full amount of the $500,000 indebtedness, plus interest. Palmer and Taylor bring this appeal only from the grant of Lamar Life's summary judgment motion.

To briefly summarize the situation, Lamar Life foreclosed a mortgage given by the Buena Vista companies. Because of this foreclosure, the SBA sued Palmer and Taylor on their personal guarantees of a second mortgage on the same property, with which Lamar life had no connection.

■ Of course, Palmer and Taylor are the sole stockholders of Western & Southern, which in turn is the sole stockholder of the Buena Vista companies, the mortgagors of the primary mortgage foreclosed by Lamar Life. Palmer and Taylor concede that as stockholders of the mortgagor corporation, they would have no standing to pursue a cause of action for damages to the corporation. The law is clear that only a corporation and not its shareholders, not even a sole shareholder, can complain of an injury

sustained by, or a wrong done to, the corporation. *See, e. g., Mendenhall v. Fleming Co.*, 504 F.2d 879, 881 (5th Cir. 1974); *Martens v. Barret*, 245 F.2d 844, 846 (5th Cir. 1957).

Palmer and Taylor do contend, however, that they come within the exception to that general rule, which allows a stockholder to maintain an action in his own right where he is injured because of some "special duty" owed the stockholder independent of his status as stockholder. Palmer and Taylor rely heavily on *Buschmann v. Professional Men's Association*, 405 F.2d 659 (7th Cir. 1969), where Buschmann, the guarantor of a corporation's debt, was permitted to sue the manager of the corporation whose mismanagement caused Buschmann to pay on the guaranty. That case is distinguishable from the present case, however, because there the defendant manager not only had a contract with the corporation but also with Buschmann, and the promises to Buschmann personally are what gave him standing to sue. In the present case, on the other hand, there was no contract or agreement between Lamar Life and Palmer and Taylor. Lamar Life had the mortgage agreement only with the corporation. Palmer and Taylor were guarantors of the SBA loan, to which Lamar Life was not a party, and had nothing personally to do with the Lamar Life loan to the Buena Vista companies. *Buschmann* would be relevant if Palmer and Taylor had guaranteed the Lamar Life loan, and suffered a loss because of an improper foreclosure on that loan by Lamar Life. But here Lamar Life made no promises to Palmer and Taylor, and had no duty to them as shareholders of the Buena Vista companies. Therefore the general rule applies that shareholders have no standing to complain of wrongs to their corporations.

Thus, the only question is whether Palmer and Taylor have standing to complain of the foreclosure of the primary lien to which they are not a party because they are guarantors of a secondary, inferior lien. Neither party has cited us to any cases dealing with the question, nor has our research revealed any cases in point. The general rule is that only the "mortgagor or those claiming under him in privity," or those primarily liable for the payment of the mortgage debt or any deficiency, can attack the foreclosure sale. *See generally* Annot., 143 A.L.R. 528 (1943); 3 Jones on Mortgages § 2138 (8th ed. 1928); 2 Wiltsie on Mortgage Foreclosure § 746 (5th ed. 1939). In the present case, the Buena Vista companies, not Palmer and Taylor, were the mortgagors on the Lamar Life loan, and there was no evidence that either Palmer or Taylor were in contractual privity with the Buena Vista companies. Palmer and Taylor did not guaranty the Lamar Life mortgage, and had no personal liability for payment of the Lamar Life mortgage or any deficiency. Rather, Palmer and Taylor guaranteed the inferior mortgage held by the SBA. One who is neither the primary mortgagor nor its privies, nor in any way personally liable on the primary mortgage debt, has no standing to complain of defects in the foreclosure of the primary mortgage.

At least in some states, the holder of an inferior lien has standing to complain of the foreclosure of the primary mortgage. *See, e. g., Estelle v. Hart*, 55 S.W.2d 510, 513 (Tex.Com.App.1932); Annot., 143 A.L.R. 528, 538–539 (1943). The SBA, holder of the inferior lien, did not complain of Lamar Life's foreclosure of the primary lien. Palmer and Taylor have not claimed that their status as guarantors of the SBA lien would give them the ability to bring this action as subrogees to any rights which the SBA might have. Since this issue has not been raised by the parties, we do not reach it.

In their brief, Palmer and Taylor also contend in passing that they at least have standing to bring a cause of action based on Lamar Life's common law fraud and conspiracy. Palmer and Taylor base this cause of action mainly on the allegation that Lamar Life orally promised to allow Palmer and Taylor to buy back the property after the foreclosure sale. Even accepting this allegation as true, the grant of summary judgment would still be correct, because

the statute of frauds requires such a promise to be in writing to be enforceable.

Accordingly, the district court's order granting summary judgment to Lamar Life is affirmed on the ground that Palmer and Taylor lacked standing to bring such suit.

AFFIRMED.