693 P.2d 953

Irwin **MORDKA**, Plaintiff/Appellee,

v.

**MORDKA ENTERPRISES, INC., Maurice Mordka and Harvey Mordka, Defendants/Appellants.**

**No. 2 CA–CIV 5043.**

Court of Appeals of Arizona, Division 2.

Sept. 5, 1984.

Review Denied Dec. 18, 1984.

Schorr, Leonard & Felker, P.C. by Judith B. Leonard, Tucson, for plaintiff/appellee.

Dennis A. Rosen, Tucson, for defendants/appellants.

## OPINION

BIRDSALL, Chief Judge.

The parties to this appeal are three brothers. Irwin Mordka was the plaintiff in the trial court and is the appellee here. Maurice Mordka, Harvey Mordka and Mordka Enterprises, Inc., which was equally owned by the three brothers, were the defendants in the trial court and have appealed. The trial court held, in part, that the corporation was "deadlocked as contemplated by A.R.S. § 10–097" and directed that final judgment be entered pursuant to Rule 54(b), Arizona Rules of Civil Procedure, 16 A.R.S. The judgment provided that "[t]he amount of the damages shall be determined at a trial to the court at a time to be fixed . . . ."

Trial was to the court without a jury. Findings of fact and conclusions of law were requested and made. Rule 52(a). We are bound by the trial court's findings of fact unless clearly erroneous.

The facts necessary to an understanding of the issues presented follow. On December 26, 1962, Mordka Enterprises, Inc. (MEI) filed articles of incorporation and the family corporation came into existence. The business of the corporation was buying, renting and selling real property. Initially, Mrs. Flora Mordka, the mother of the three men, owned all of the shares. Periodically, from 1962 until 1968, Mrs. Mordka gave some of the shares to her three sons equally. As of 1968, Mrs. Mordka still owned a majority of shares of MEI.

In April 1969 Mrs. Mordka decided to sell her shares to the corporation and thus divide the corporation equally between her three sons. At that point, Mrs. Mordka had sixty-one percent (61%) and her three sons each had thirteen percent (13%).

Irwin was not involved in the active management of the corporation. With the new arrangement, each brother would have one-third (⅓) of the shares and any two of the brothers could ignore the wishes of the third. Irwin insisted on a unanimous consent requirement for certain major corporate acts which included the purchase and sale of real estate, changes in officer's salaries, changing attorneys, insurance agents or accountants and borrowing. This arrangement would essentially give each brother a veto power in the important areas of corporate activity. Irwin refused to agree to the corporation's purchase of his mother's shares unless the brothers signed the unanimous consent agreement. This agreement was incorporated in the minutes of an April 1969 combined stockholders and directors meeting.[1] Those min-

---

1. After discussion had thereon, upon motion duly made and seconded, the Secretary was directed to cast one unanimous vote in favor of the following resolutions:

utes also provided for the purchase of the mother's shares. Thus the new corporate structure, with one-third (⅓) of the shares being owned by each of the brothers, was created. All three brothers approved these minutes and all three have been directors and the only shareholders since that time. Initially, we reject the appellant's argument that it was necessary that Mrs. Mordka vote on this resolution. For all practical purposes she no longer had any interest in the corporation. This objection was never raised at that time or at any subsequent time until this appeal.

In May 1977 Maurice offered Irwin a job with MEI at the same salary as Maurice was earning. Irwin, who was living in New Zealand at the time, accepted. Relying on the agreement he had made with his brothers, Irwin arrived in the United States with his family. He began work in February 1979. In June, Harvey and Maurice fired Irwin and terminated his salary.

In September 1979 Maurice increased his salary. Harvey's salary was increased several months later. Irwin did not consent to the raises. Irwin was receiving no benefits from his one-third interest in the corporation. His brothers were ignoring him and doing as they pleased with the business. In March 1980 Irwin attempted to terminate his brothers' salaries. In April 1980 Maurice and Harvey tried to modify the unanimous consent agreement with a proposal for majority rule. Maurice and Harvey voted for the modification, and Irwin voted against it. Maurice and Harvey, however, began to operate by majority rule. They bought and sold property and raised their own salaries both in clear and direct violation of the unanimous consent agreement.

In sum, Maurice and Harvey were excluding Irwin from the business, making decisions without consulting him, declaring no dividends and paying him nothing. Irwin brought this lawsuit against them in April 1982.

Although Irwin ratified corporate acts taken without his consent until 1978, he did not do so thereafter. The trial court found that there was no 1983 meeting of either shareholders or directors and that since 1980, the corporation had suffered injury by being unable to exercise options in real estate, to buy and sell property or take out or make loans. It found the injury caused by the deadlock to be irreparable.

The contentions on appeal are that the trial court erred in:

1) interpreting the April 1969 minutes as other than a resolution of the board of directors,

2) finding a statutory deadlock, and

3) failing to consider the statute of limitations as an affirmative defense.

We find no merit in any of these contentions and affirm.

▪ The agreement regarding the requirement for unanimous approval of the various corporate decisions was memorialized only in the form of the resolution adopted at the combined meeting of shareholders and directors. No other writing in the nature of a contract was executed to set forth the agreement. The trial court

RESOLVED: That no action shall be taken on behalf of the corporation by any officer or director without the unanimous written consent of the Board of Directors involving the purchase and sale of property, real, personal, mixed or intangible, or the borrowing of funds or committing the credit of the corporation, or involving a change of the corporation's present attorney, accountant or insurance agent. The President, however, shall have the power and authority incident to the leasing and maintenance of the rental properties of this corporation.
RESOLVED FURTHER: That no officer or director shall receive compensation, either for services rendered or otherwise, unless approved by unanimous consent of the Board of Directors.
RESOLVED FURTHER: That Maurice Mordka, the President, shall receive a salary of $500.00, this compensation to continue on a month-to-month basis and unless or until otherwise changed by action of the Board of Directors.
RESOLVED FURTHER: That no advances in salary or other costs or expenses shall be permitted except upon the unanimous written consent of the entire Board of Directors.

found that the resolution was a written, enforceable contract. We agree. We also believe the trial court could have properly considered it to be a bylaw, or an amendment to the bylaws, of the corporation.

The appellants argue that the parol evidence rule prohibits the consideration of extrinsic evidence to vary the terms of a writing, in this case the minutes. The trial court did admit evidence of the negotiations leading to the resolution contained in the minutes. That evidence proved only that the writing was a fully integrated document. It did not add to, subtract from, vary or contradict the terms of the complete and unambiguous document. *See Richards Development Company v. Sligh*, 89 Ariz. 100, 358 P.2d 329 (1961). The finding that the "resolution" was a contract between the parties does not vary its terms. That finding is actually a legal conclusion that the document constitutes a contract with all essential elements: offer, acceptance, consideration and terms. *Savoca Masonry Company, Inc. v. Homes and Son Construction Company, Inc.*, 112 Ariz. 392, 542 P.2d 817 (1975). A contract is an agreement or instrument evidencing it. *Moore v. Smotkin*, 79 Ariz. 77,

283 P.2d 1029 (1955). The character of an instrument is not determined by the name given it, but by the general legal effect of its terms. *Holdren v. Peterson*, 52 Ariz. 429, 82 P.2d 1095 (1938). A comprehensive discussion of shareholder agreements and the desirable purposes they may have in a closely held corporation is found in *Blount v. Taft*, 295 N.C. 472, 246 S.E.2d 763 (1978). There the Supreme Court of North Carolina found that a bylaw requiring certain unanimity among members of an executive committee appointed by the board of directors was a stockholder agreement. Nevertheless, since the board at the same meeting also adopted a bylaw regarding amendments of the bylaws, the court held the bylaw could be amended. The decision turned both on different facts and statutory law than are present in the instant case.

The appellants next contend that the resolution requiring unanimity could be rescinded by a majority of the directors, two in this case, because it did not amend either the articles of incorporation or the corporate bylaws. They contend that the provisions of the general corporation law, to wit, A.R.S. §§ 10–035 [2], 10–027 [3], 10–032 [4] and

### 2. Board of directors

The business and affairs of a corporation shall be managed by a board of directors except as may be otherwise reserved to the shareholders in the articles of incorporation. Directors need not be residents of this state or shareholders of the corporation unless the articles of incorporation or bylaws so require. The articles of incorporation or bylaws may prescribe other qualifications for directors. The board of directors shall have authority to fix the compensation of directors for services in any capacity unless otherwise provided in the articles of incorporation or bylaws.

### 3. Bylaws

The original bylaws of a corporation may be adopted by the incorporators or by the initial board of directors. The power to alter, amend or repeal the bylaws or adopt new bylaws, subject to repeal or change by action of the shareholders, shall be vested in the board of directors unless reserved to the shareholders by the articles of incorporation. The bylaws may contain any provision, not inconsistent with law or the articles of incorporation, relating to the business of the corporation, the conduct of its affairs, its rights or powers, and the rights or

powers of its stockholders, directors, officers or employees.

### 4. Quorum of shareholders

Unless otherwise provided in the articles of incorporation, a majority of the shares entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of shareholders, but in no event shall a quorum consist of less than one-third of the shares entitled to vote at the meeting. All shares represented and entitled to vote on any single subject matter which may be brought before the meeting shall be counted for the purposes of a quorum. Only those shares entitled to vote on a particular subject matter shall be counted for the purposes of voting on that subject matter. Business may be conducted once a quorum is present and may continue until adjournment of the meeting notwithstanding the withdrawal or temporary absence of sufficient shares to reduce the number present to less than a quorum. Unless the vote of a greater number or voting by classes is required by this chapter, the affirmative vote of the majority of the shares then represented at the meeting and entitled to vote on the subject matter shall be the act of the shareholders; provided, however, that if the shares then represented are less than required to constitute a

10–040[5] are controlling in the absence of an amendment of the articles or bylaws.

■ Assuming, arguendo, that the new Arizona corporation laws enacted in 1975 are applicable to this corporation in this lawsuit (see A.R.S. § 10–147(A)[6]), A.R.S. § 10–035 and A.R.S. § 10–027 do not require an amendment of either the articles or the bylaws in order to provide for unanimous agreement among the directors. A.R.S. § 10–032, which essentially pertains to quorums, can be interpreted to require a provision (or amendment) in the articles if more than a majority vote of the shareholders is required for any specific purpose. *See Jones v. Wallace,* 291 Or. 11, 628 P.2d 388 (1981). However, that is not the issue presented. The resolution does not require shareholder unanimity. It requires the unanimous vote or consent of the directors for certain management acts. There was no legal need to amend the corporate articles.

■ A.R.S. § 10–040 does specifically provide that if more than a majority of the directors are required for any corporate action, the requirement for this greater number must be contained in the articles or bylaws. We believe the 1969 unanimous resolution of the directors should be considered as a bylaw or an amendment to the then existing bylaws. In *Hernandez v.*

*Banco De Las Americas,* 116 Ariz. 552, 570 P.2d 494 (1977) our supreme court said:

It is accepted law that by-laws may be amended informally as well as formally, orally or in writing ... by acts as well as by words, and may be evidenced by a course of proceeding or conduct on the part of the corporation inconsistent with the by-laws claimed to have been amended or repealed. See *Bay City Lumber Co. v. Anderson,* 8 Wash.2d 191, 111 P.2d 771 (1941). Moreover, when a Board of Directors has the power to adopt by-laws, it has power to waive those adopted, and we therefore hold that when the Board entered into a one-year contract with Herring which extended beyond the then-Board's term, the By-Law at issue was informally modified, or waived. 116 Ariz. at 555–56, 570 P.2d 494.

*And see Jones v. Wallace, supra.*

In *Blount v. Taft, supra,* the Supreme Court of North Carolina, when confronted with a similar argument, reasoned as follows:

Counsel have debated at length the question whether Section 7 of Eastern's bylaws is a bylaw or a shareholder's agreement within the meaning of G.S. 55–73(b). In our view this debate is sterile, for these terms are not mutually exclusive. Bylaws which are unanimously enacted by all the shareholders of a cor-

---

quorum, the affirmative vote must be such as would constitute a majority if a quorum were present; provided further, the affirmative vote of a majority of the shares then present is sufficient in all cases to adjourn a meeting.

**5. Quorum of directors**

A majority of the number of directors then serving shall constitute a quorum for the transaction of business unless a greater number is required by the bylaws, or a different number is provided for in the articles of incorporation. In no case shall less than one-third of the number of directors then serving nor less than two directors constitute a quorum, except that when a board of one director is authorized, then one director shall constitute a quorum. The act of the majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors, unless the act of a greater number is required by the articles of incorporation or the bylaws.

**6. Application to existing corporations**

A. The provisions of this chapter shall apply to all existing corporations organized under any general act of this state providing for the organization of corporations for a purpose or purposes for which a corporation might be organized under this chapter; provided, however, that all provisions of the articles of incorporation of any such existing corporation, which provisions were valid immediately prior to the effective date of this chapter, shall remain in full force and effect as to such existing corporation:

1. Until the end of the term for which such corporation was formed to endure or had been previously renewed, or until an amendment or restatement of the articles of incorporation, or a merger, consolidation or reorganization of such corporation.

\* \* \* \* \* \*

poration are also shareholders' agreements. Consensual agreements coming within G.S. 55–73(b) are shareholders' agreements whether they are embodied in the bylaws or in a duly executed side agreement. No particular title, phrasing or content is necessary for a consensual arrangement among all shareholders to constitute a "shareholders agreement." Consequently, we hold that Section 7 of the bylaws adopted on 20 August 1971 is a shareholders' agreement within the meaning of G.S. 55–73(b). 246 S.E.2d at 771.

As set forth in *Blount,* the North Carolina statute, G.S. 55–73(b), provided:

G.S. 55–73(b) provides, *inter alia,* that "written agreement to which all of the shareholders have actually assented ... which relates to any phase of the affairs of the corporation, ... shall be invalid ... on the ground that it is an attempt by the parties thereto to treat the corporation as if it were a partnership or to arrange their relationships in a manner that would be appropriate only between partners." Such an agreement may be "embodied in the charter or bylaws or in any side agreement in writing and signed by all the parties thereto ...." 246 S.E.2d at 770–71.

Although we have no comparable statute, we find no prohibition against the unanimity resolution in our corporation code. The sections which we have set forth do not prohibit such an agreement and specifically give the directors the power to alter, amend or repeal bylaws unless that power is reserved in the shareholders in the articles. The MEI articles gave the board the power to adopt, amend or revise bylaws until or unless otherwise provided by unanimous resolution of the shareholders. The resolution involved herein was unanimously adopted at a combined shareholders directors meeting. Thus, whether the resolution is treated as a directors' action amending the bylaws or as a unanimous resolution of the shareholders amending the bylaws, there was such authority.

The appellants ignore the provisions of the articles and bylaws of the corporation. The articles contain no provision giving a majority of directors the power to rescind a resolution of the board requiring unanimity for certain designated corporate acts. They do provide that: "The affairs of the corporation shall be conducted by a Board of not less than three nor more than nine Directors, ...". They also provide:

ARTICLE X. The By-Laws of this corporation shall be adopted and may be amended or revised by the Board of Directors until or unless otherwise provided by unanimous resolution of the stockholders.

The bylaws contain the following provision.

ARTICLE IX. AMENDMENTS

Section 1. AMENDMENT—These By-Laws may be amended by unanimous vote of the Stockholders entitled to vote at any annual meeting, or at any special meeting of Stockholders called for that purpose.

Thus if the unanimity resolution constituted the informal adoption of a bylaw or an amendment of the bylaws, both the articles and the bylaws authorized this action.

We distinguish the authorities cited by the appellant. *Jones v. Wallace, supra,* involved a bylaw containing a quorum requirement of 100 percent of all the stockholders at a meeting of the stockholders. This bylaw was in conflict with the Oregon statute very similar to A.R.S. § 10–032 and the articles of the corporation. In addition, the case involved a contest between the original sole shareholder and two new shareholders who had purchased stock and were presumed to have relied on the published articles and the statute. In the instant case there are no such "new" shareholders. The three brothers were the sole shareholders and directors when the resolution was adopted and this arrangement has continued to the present.

*Roach v. Bynum,* 403 So.2d 187 (Ala. 1981) involved bylaws which required an affirmative vote of 70 percent of shareholders present at a meeting of shareholders to act, 70 percent of all shareholders to amend

articles or bylaws, 70 percent of the directors to constitute a quorum at a meeting and 70 percent of the directors present to act. Disagreements arose and the trial court found the corporation hopelessly deadlocked by these high percentage requirements. The Supreme Court of Alabama disagreed, finding the provisions requiring a 70 percent vote of the shareholders to be void. The court reasoned that since a majority of the shareholders could call a meeting and amend the existing bylaws, they held the power to break the deadlock resulting from the existing bylaws. The opinion turns on a provision in the Alabama corporation law which provides that "[t]he certificate [articles] of incorporation may contain provisions requiring for any corporate act the vote of a larger proportion of the stock ... than is required by this chapter." 403 So.2d at 193. The certificate contained no such provision and the court held that the bylaw could not contain such a requirement. The opinion does not address the bylaw requiring 70 percent of the directors to constitute a quorum and 70 percent of that number to act. Presumably that may have been because a majority of the corporation's shareholders could amend the bylaws. As we have noted, that is not the case in MEI. Under both the articles and the bylaws the unanimous vote of the stockholders is necessary to amend the bylaws. Thus, if the resolution is considered to be a bylaw, as we believe it can, then the deadlock cannot be broken.

Turning now to the trial court finding of statutory deadlock, it is apparent to us that since major corporate decisions required unanimity which was not forthcoming, a deadlock existed. The appellants argue that the corporation continued to be profitable; this is not the sole criterion. The trial court found that the corporation was unable to borrow and to exercise options to purchase. Considering that dealing in real estate was the business of the corporation, the trial court could conclude this constituted irreparable injury. A.R.S. § 10–097 provides only that irreparable injury is threatened by reason of the dead-

lock in its management. The record supports the findings and conclusions of the trial court in this regard. *King v. Coulter,* 113 Ariz. 245, 550 P.2d 623 (1976) is not in point since, as the opinion notes, it did not involve a management deadlock.

Finally, the complaint was filed well within the four-year limitation period which the appellant contends was applicable, A.R.S. § 12–544. Assuming, arguendo, that this statute applies, the cause of action arose when the appellants elected to rescind the unanimity resolution in April 1980. The complaint was filed April 1, 1982. Even if the cause accrued in 1979 when the appellee was discharged, it was within the four-year period. The acts prior to that time to which the appellee consented did not give rise to any cause of action. Nor did the cause of action accrue when the contract was made in 1969. *See Eng v. Stein,* 123 Ariz. 343, 599 P.2d 796 (1979).

Affirmed.

HOWARD and HATHAWAY, JJ., concur.