**John P. GANNON, Appellant,**

**v.**

**John H. BAKER, III, Appellee.**

**No. 01–89–00531–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 7, 1991.

Rehearing Denied April 4, 1991.

Gregory Jones, John Roberson, Houston, for appellant.

Thomas McDade, Ronald J. Palmer and Lee Hunnell, Houston, W. Wendell Hall, Fulbright and Jaworski, San Antonio, for appellee.

Before SAM BASS, DUNN and O'CONNOR, JJ.

## OPINION

SAM BASS, Justice.

John P. Gannon appeals from a partial take-nothing summary judgment, and a later bench trial order dismissing Gannon's remaining claims against John H. Baker, III and J & B Sign Company, based on the premise that Gannon's sole remedy was the recovery of an amount equal to Gannon's share of the appraised value of the jointly owned corporate stock.

We affirm in part and reverse and remand in part.

Gannon was a 50 percent owner of a partnership that operated an outdoor sign business, "J & B Sign Company." In 1976, in an effort to obtain capitalization, the partners, Bill Nail and Gannon, agreed to bring in John H. Baker, III, as an owner. Baker and his lawyer suggested that the partnership be incorporated, and that Baker be given 60 percent of the stock, with 20 percent each to Gannon and Nail. In addition, the parties entered into a trust agreement, whereby Baker would be entitled to vote Gannon's and Nail's shares of stock, "for so long a time as the corporation shall be obligated on any note, guaranty, or other obligation of whatsoever kind or nature that requires the individual guaranty, legally or otherwise of any of the parties hereto or the endorsement or guaranty of any person, firm or company of the parties hereto." Baker promised to act in good faith when voting those shares.

Gannon and Nail instituted suit against Baker in 1983, alleging that they had agreed to the unequal stock distribution, in exchange for Baker's oral promise to "level" stock ownership when the trust agreement terminated. They contended that Baker had influenced creditors to continue requiring Baker's personal guarantee on corporate debts, even though the corporation was financially stable enough that a personal guarantee was unnecessary. The petition further alleged that Baker had refused to place the oral agreement in writing, as he had originally promised he would do.

While suit was pending, on December 30, 1986, J & B Sign Company sold its assets to Outdoor Systems, Inc. Before that, on December 2, 1986, notice was sent to Gannon that a special meeting of the J & B shareholders would be held to consider the sale of substantially all the assets of J & B Sign Company. The proposed sale was in the amount of $8,000,000. Gannon formally exercised his dissenting shareholder's rights of appraisal, arguing that the fair value of the company was $11,000,000, and that under the oral leveling agreement, he

owned 50 percent of the stock. Nail had already sold his ownership interest to Baker by this time.

Accordingly, Gannon wanted the corporation to pay him $5,500,000 for his 50 percent ownership interest obtained through the leveling agreement, and an additional $500,000 in dividends. Baker responded, as chairman of J & B, by stating that the fair value of Gannon's shares was $578,000.

Baker and J & B filed a motion to appoint an appraiser to determine the fair value of the stock and a motion for summary judgment. Among other allegations in the motion for summary judgment, Baker and J & B asserted that the oral leveling agreement was invalid because it violated the Statute of Frauds and the parol evidence rule, and because Gannon had neither established the existence of consideration nor met the elements of a binding gift. The court granted a partial summary judgment in favor of Baker and J & B regarding the oral leveling agreement.

The trial court also ordered that appraisers be appointed to determine the market value of J & B. Gannon objected to the appointment of appraisers because he stated that it was undisputed that the assets were sold for $8,000,000. Gannon wanted a jury to "resolve the issues pertaining to conversion, breach of fiduciary duty, fraud, usurpation of corporate opportunity and breach of contract." The trial court directed the appraisers to determine the value as of the day before the shareholders approved the sale of substantially all the assets.

The appraisers concluded that the company's fair market value as of December 14, 1986, was $2,397,324. Gannon's 20 percent share of that amount was $479,465, and the appraisers recommended that the stock be discounted by 35 percent due to its minority position and lack of marketability, to a fair market value of $311,652. The judgment, dated April 6, 1989, awarded $479,-464.08 to Gannon, "such sum being the fair value of Plaintiff's share of stock ... *as determined solely by the appraisal report.*" (Emphasis added.) The trial court also awarded prejudgment interest of 10 per cent per annum and costs to Gannon, and then denied all relief not expressly granted.

■ In his first point of error, Gannon argues that the trial court erred in holding appraisal was his only remedy, excluding any other claims he had against Baker.

Among the claims remaining after the appraisal and the partial summary judgment, but before the trial court generally denied all further relief, was Gannon's claim that Baker had converted Gannon's stock to Baker's personal use, a claim affecting Gannon personally. In addition, Gannon asserted that Baker had committed acts against the corporation, which had the incidental effect of lowering the value of Gannon's corporate stock. In particular, Gannon alleged that Baker had: (1) usurped corporate opportunities; (2) diverted and converted corporate assets and profits; (3) entered into transactions with J & B that were favorable to Baker, but unfavorable to the corporation; (4) maliciously suppressed dividends; and (5) engaged in fraud during liquidation.

Gannon argues that the trial court erred in dismissing the remainder of his suit alleging acts of self-dealing by Baker occurring prior to, and not in any way connected with, the sale of substantially all the assets, as well as allegations of fraud and self-dealing connected with the sale of substantially all the assets.

Former article 5.11 of the Texas Business Corporations Act,[1] applicable to this suit, provides that a shareholder shall have the right to dissent from the following corporate actions: merger; consolidation; or sale of substantially all the assets. A shareholder who dissents, in conformity with the statute, can force the corporation to purchase his outstanding shares of stock at their fair market value, as determined

---

1. Act of June 15, 1973, 63rd Leg., R.S., ch. 545, sec. 36, 1973 Tex.Gen. Laws 1486, 1508, *amended by,* act of June 15, 1989, 71st Leg., R.S., ch. 801, sec. 34, 1989 Tex.Gen. Laws 3610, 3637–38.

Subsequent references to "article 5.11" in this opinion mean the former article 5.11 prior to the 1989 amendment.

by the trial court, with the assistance of court-appointed appraisers. TEX.BUS. CORP.ACT ANN. art. 5.12(D).[2] Former article 5.12(G) of the Texas Business Corporations Act,[3] the statute applicable to this case, provides:

> In the absence of *fraud in the transaction*, the remedy provided by this Article to a shareholder objecting to any corporate action referred to in Article 5.11 of this Act is the *exclusive remedy* for the recovery of *the value of his shares or money damages* to such shareholder *with respect to such corporate action;* and if the existing, surviving, or new corporation, as the case may be, complies with the requirements of this article, any such shareholder who fails to comply with the requirements of this article shall not be entitled to bring suit for the recovery of the value of his shares or money damages to such shareholder with respect to such corporate action.

TEX.BUS.CORP.ACT ANN. art. 5.12(G) (emphasis added).

While appraisal is generally the exclusive remedy to a dissenting shareholder, it is not the exclusive remedy available when there is fraud in the transaction. TEX.BUS. CORP.ACT ANN. art. 5.12(G). The allegations that Baker failed to disclose material information and engaged in self-dealing in distributing the corporate assets are allegations of fraud in the transaction. *See* TEX. BUS.CORP.ACT ANN. art. 5.12 Comment of Bar Committee—1967 (Vernon 1980). The Texas Bar Committee stated its intention that a dissenting shareholder invoking the "exclusive" remedy of appraisal should not be precluded from challenging the regularity of the corporate reorganization. *Id.* Therefore, Gannon is entitled to receive payment from the corporation in the amount of the fair value of his stock. In addition, if Gannon proves there was fraud or irregularity in the sale of assets that affected the fair value of his stock, he may recover special damages from the corporation for the losses occasioned by the fraud or irregularity.

Gannon also seeks to hold Baker liable for acts not connected with the sale of substantially all the assets that affected the value of the corporate stock. Gannon relies on dicta in *Farnsworth v. Massey,* 365 S.W.2d 1 (Tex.1963), which states that there may be situations where the appraisal remedy may not fully compensate the dissenting shareholder:

> One may easily conceive of a factual situation wherein a recovery of an amount equal to the "fair value" of a dissenting shareholder's interest as of a certain date would not fully compensate him for the actual loss which he had sustained. An example of a case which would give rise to special damages over and above the "fair value" of the dissenting shareholder's interest would be one in which it was shown that for some period of time the majority interest in a corporation had through fraud and unfair deals succeeded in depressing the value of the corporation's shares of stock so that when their value was measured at a date immediately prior to the sale of the corporation's assets such value would not approximately reflect the extent of the dissenting shareholder's loss. In such a case special damages above the statutory "fair value" could be recovered. Other factual situations which would give rise to special damages over and above the "fair value" measure may be imagined. There seems to be nothing in the Business Corporation Act which evinces an intention by the Legislature to forbid the recovery of special damages.

*Farnsworth,* 365 S.W.2d at 5.

Baker argues that the *Farnsworth* dicta at issue has been superseded by TEX.BUS. CORP.ACT ANN. art. 5.12(G), which was add-

---

**2.** Act of June 17, 1983, 68th Leg., R.S., ch. 442, sec. 9, 1983 Tex.Gen.Laws 2511, 2572–73, *amended by,* act of June 15, 1989, 71st Leg., R.S., ch. 801, sec. 35, 1989 Tex.Gen.Laws 3610, 3640. Subsequent references to "article 5.12(D)" in this opinion mean the former article 5.12(D) prior to the 1989 amendment.

**3.** Act of June 17, 1967, 60th Leg., R.S., ch. 657, sec. 12, 1967 Tex.Gen.Laws __, 1721, *amended by,* ch. 801, sec. 35, 1989 Tex.Gen.Laws 3610, 3640. Subsequent references to "article 5.12(G)" in this opinion mean the former article 5.12(G) prior to the 1989 amendment.

ed in 1967. We agree. The Texas Bar Committee explained the purpose of the addition of section (G) to article 5.12:

> A chief purpose of Art. 5.12 was to "provide one forum where all claims for *appraisal* may be consolidated, regardless of claimant's place of residence, thus eliminating a multiplicity of action in various courts which is harmful to corporation and shareholders alike." 2 Mod. Bus.Corp. Act Ann. 411 (1960). The Committee was of the opinion that in a case where the dissenting shareholder is seeking to recover only the fair value of his shares (even though he might label his remedy a suit for damages), then, *in the absence of fraud*, the appraisal proceedings should be his only remedy. The Committee did not feel that any statutory limitation or penalty should be placed on the right of the dissenting shareholder to challenge *the validity or the regularity of the procedure by which the corporate reorganization was accomplished.*

TEX.BUS.CORP.ACT ANN. art. 5.12 Comment of Bar Committee—1967 (Vernon 1980) (emphasis added). Gannon's allegation, that Baker committed improper acts not connected with the sale of the assets, which resulted in depressing the value of the corporate stock, does not encompass fraud in the transaction, as it does not constitute a challenge to the regularity of the procedure by which the corporate reorganization was accomplished. Gannon may not assert these claims against the corporation as a dissenting shareholder.

■ In addition, Baker asserts that Gannon may not sue Baker individually for wrongs that Baker may have committed against the corporation, because Gannon lacks standing. Gannon contends that Baker breached the terms of the trust agreement, whereby Baker promised to exercise good faith in voting Gannon's shares of stock. Accordingly, Gannon urges that he has standing to sue Baker personally for wrongs done to the corporation, because Baker violated duties arising under a contract.

■ The general rule is that a shareholder may not directly sue an officer or director of the corporation for wrongs done to the corporation. *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex.1990); *Commonwealth of Massachusetts v. Davis*, 140 Tex. 398, 407, 168 S.W.2d 216, 221 (1942), *cert. denied*, 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943); *Francis v. Beaudry*, 733 S.W.2d 331, 334 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). The rationale is that the cause of action belongs to the corporation, and not the individual shareholder. *Wingate*, 795 S.W.2d at 719; *Commonwealth of Massachusetts*, 140 Tex. at 407, 168 S.W.2d at 221; *Francis*, 733 S.W.2d at 334.

■ This rule does not prohibit a stockholder from recovering damages for wrongs done to him individually "where the *wrongdoer* violates a duty arising from contract or otherwise, and owing directly by him to the stockholder." *Wingate*, 795 S.W.2d at 719 (emphasis added); *accord Stinnet v. Paramount–Famous Lasky Corp.*, 37 S.W.2d 145, 150 (Tex. Comm'n App.1931, holding approved); *Horton v. Robinson*, 776 S.W.2d 260, 263 (Tex.App.— El Paso 1989, no writ); *Tashnek v. Tashnek*, 630 S.W.2d 653, 656 (Tex.App.—Houston [1st Dist.] 1981, no writ); *see also United States v. Palmer*, 578 F.2d 144, 146 (5th Cir.1978) (injured stockholder may sue director or manager in individual capacity where there exists special duty owed to stockholder, independent of his status as a stockholder). However, to recover individually, a stockholder must prove a personal cause of action and a personal injury. *Wingate*, 795 S.W.2d at 719.

Gannon's allegations that Baker (1) usurped corporate opportunities, (2) diverted and converted corporate assets and profits, (3) entered into transactions with J & B that were unfavorable to the company, but profitable to Baker, (4) maliciously suppressed dividends, and (5) engaged in fraud on the corporation during liquidation, are causes of action that belong to the corporation. Although Gannon has produced a contract between the parties, he does not allege a personal injury arising from these acts, other than the fact that they had the

incidental effect of lowering the value of his corporate stock. A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong. *Wingate*, 795 S.W.2d at 719. Accordingly, Gannon may not recover from Baker individually for acts affecting the corporation, because he has not alleged a personal cause of action and personal injury.

Gannon's claim that Baker converted Gannon's stock to Baker's personal use is a personal cause of action and a personal injury. He may assert that claim directly against Baker.

■ Accordingly, we hold that a dissenting shareholder, who properly pleads and proves his cause of action under article 5.12, may recover from the corporation: (1) payment for the fair value of his stock; and (2) special damages occasioned by fraud or irregularity in the sale of assets that affected the fair value of his stock, in the amount the fraud or irregularity affects the fair value. We further hold that a dissenting shareholder may not recover special damages occasioned by acts of fraud, occurring prior to, and not connected with, the sale of substantially all the assets, even though such acts may have the incidental effect of depressing the fair value of the dissenting shareholder's stock. Finally, we hold that a dissenting shareholder may recover damages for wrongs done to him individually, "where the wrongdoer violates a duty arising from contract or otherwise, and owing directly by him to the stockholder," *Wingate*, 795 S.W.2d at 719, notwithstanding any remedies available under the appraisal statute.

We sustain in part, and overrule in part, Gannon's first point of error.

In his fifth point of error, Gannon urges that the trial court erred in granting partial summary judgment with respect to the leveling agreement.

In reviewing the summary judgment granted to Baker and J & B, we accept as true evidence in favor of Gannon, grant him every reasonable inference, and resolve any doubts in his favor. *See Univer-*

*sity of Texas Health Science Center at Houston v. Big Train Carpet of El Campo, Inc.*, 739 S.W.2d 792, 792 (Tex.1987); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 315 (Tex.1987). As movants, Baker and J & B have the burden of showing as a matter of law that no material issue of fact existed as to Gannon's cause of action. *See Griffin v. Rowden*, 654 S.W.2d 435, 435–36 (Tex.1983).

■ We note that the order granting partial summary judgment on the leveling agreement did not state the specific ground upon which it was granted. When a summary judgment order does not state the specific grounds upon which it was granted, a party appealing from such order must show that each of the independent arguments alleged in the motion is insufficient to support the order. *Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *McCrea v. Cubilla Condominium Corp.*, 685 S.W.2d 755, 757 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

■ Baker and J & B asserted, as one of their grounds for summary judgment, that the oral leveling agreement was barred by the parol evidence rule. Gannon attached an affidavit, in which he explained the terms of the agreement:

*Before* I agreed to the division of stock as described above, Mr. Baker promised, and it was agreed, that in exchange for our transfer of the partnership assets into the new corporation and in return for my continued employment with the company, Mr. Baker would distribute a sufficient number of shares *to me so* that ownership would be equalized or leveled as among the shareholders once the Trust Agreement had terminated and J & B Sign Company was financially strong enough to obtain debt financing without Mr. Baker's personal guaranty.... Mr. Baker, Mr. Nail and I agreed that the levelling of ownership would occur at no additional cost to Mr. Nail or me. I did not contemplate or discuss with anyone the fact that the distribution of stock pursuant to our leveling agreement

would be a sale of stock to either Mr. Nail or me.

(Emphasis added.)

In support of the contention that the oral leveling agreement was barred by the parol evidence rule, Baker and J & B offered the minutes of the organizational meeting of the corporation as a written contract between Gannon and Baker. The minutes state that Gannon and Nail each offered to transfer certain assets to the corporation in return for 200 shares apiece, i.e. 20 percent each. The minutes further state "this corporation shall as *full payment* for said property issue to said offerors 200 shares each of the fully paid and non-assessable shares of this corporation...." (Emphasis added.)

■ The parol evidence rule excludes evidence of a prior or contemporaneous oral agreement between the parties to a written contract if such evidence varies or contradicts the terms of the writing. *Wagner v. Morris*, 658 S.W.2d 230, 231 (Tex.App.— Houston [1st Dist.] 1983, no writ). Courts in other states are not in agreement whether corporate minutes may constitute a final written agreement for purposes of the parol evidence rule. *Houck v. Martin*, 82 Ill.App.3d 205, 37 Ill.Dec. 531, 537, 402 N.E.2d 421, 427 (1980) (corporate minutes are not instruments or contracts within the meaning of the parol evidence rule); *Wilson v. Red Bluff Daily News*, 237 Cal. App.2d 87, 46 Cal.Rptr. 591, 594 (Cal.Ct. App. [3rd Dist.] 1965) (parol evidence rule does not apply to corporate minutes); *compare with Mordka v. Mordka Enter., Inc.*, 143 Ariz. 298, 693 P.2d 953, 956–57 (Ariz. Ct.App.1984) (written corporate minutes can constitute written enforceable contract under parol evidence rule).

In *Bowers Steel, Inc. v. DeBrooke*, 557 S.W.2d 369, 372–73 (Tex.Civ.App.—San Antonio 1977, no writ), the court held that the parol evidence rule did not bar testimony concerning an oral agreement for a 20 percent interest in corporate stock, in exchange for accepting employment, where the subsequent written minutes of the corporation stated that the board of directors recommended a plan be developed whereby the employee could acquire an equity interest in the corporation. The court implicitly accepted the minutes of the meeting as a written contract for the purposes of the parol evidence rule, while noting that the prior oral agreement was not inconsistent with the subsequent written minutes. *Id.* at 373.

In our case, the minutes of the organizational meeting state that Gannon would receive 200 shares "as full payment" for the assets contributed to the corporation. The terms of the prior oral leveling agreement are inconsistent with the minutes of the organizational meeting. We hold that the organizational minutes, Gannon's affidavit in response to J & B's motion for summary judgment, and the trust agreement show a written contract for the purpose of the parol evidence rule as to the corporation. We find that evidence of the prior oral leveling agreement is barred by the parol evidence rule as to the corporation.

Gannon's fifth point of error is overruled.

■ In his fourth point of error, Gannon urges that, to the extent the trial court made any implied fact findings in this case, the court erred in failing to issue written findings of fact and conclusions of law, in response to Gannon's timely request.

Both parties agree that Gannon timely filed a request for findings of fact and conclusions of law. Both parties agree that Gannon timely *filed* a subsequent reminder. Baker and J & B contend that mere filing of the subsequent reminder does not meet the requirement that the party demanding findings and conclusions "*call* the omission to the attention of the judge ..." Tex.R.Civ.P. 297 (emphasis added.)

In *Cherne Industries, Inc. v. Magallanes*, 763 S.W.2d 768 (Tex.1989), the Texas Supreme Court dispensed with the requirement that the initial request for findings of fact and conclusions of law be presented to the trial judge. *Id.* at 772. The court held that timely filing a copy of the initial re-

quest for findings and conclusions with the clerk of the court is sufficient under TEX.R. CIV.P. 296. *Cherne*, 763 S.W.2d at 772. The court specifically declined to decide whether the mere filing of the subsequent reminder is sufficient under TEX.R.CIV.P. 297. *Cherne*, 763 S.W.2d at 772. We note that the courts of appeals are not in agreement on whether the subsequent reminder must be filed or presented. *National Bugmobiles, Inc. v. Jobi Properties*, 773 S.W.2d 616, 618 (Tex.App.—Corpus Christi 1989, writ denied) (merely filing the subsequent reminder with clerk does not satisfy the rule 297 requirement that the demanding party call the omission to the attention of the judge); *compare with Berry v. Berry*, 770 S.W.2d 90, 92 (Tex.App.—Dallas 1989, writ denied) (in the absence of some evidence to the contrary, the filing of a reminder notice with the clerk creates a presumption that such notice was called to the attention of the trial judge on the date of filing).

We recognize the difference in wording between rule 296, which provides that the initial "request shall be *filed*," and rule 297, which provides that where the judge fails to file findings and conclusions, a party shall "call the omission to the attention of the judge," in writing. Notwithstanding this difference, we follow the *Berry* case, and hold that in the absence of evidence to the contrary, the filing of a reminder with the clerk creates a presumption that such notice was called to the attention of the trial judge on the date of filing. We believe that this holding is in keeping with the reasoning the Texas Supreme Court employed in dispensing with the presentment requirement for the initial request:

> In a time when the cost and delay of litigation threaten the right of meaningful access to the courts for many of our citizens, we cannot condone an erroneous interpretation of our rules, however embedded in our practice, which discourages litigants from availing themselves of a cheaper and quicker means of judicial resolution.

*Cherne*, 763 S.W.2d at 772.

■ Where all requests for findings and conclusions have been properly made,

the failure to respond is presumed harmful, unless the record before the appellate court affirmatively shows that the complaining party has suffered no injury. *Cherne*, 763 S.W.2d at 772. In this case, we cannot say the record affirmatively discloses no injury. *See id.*

■ Gannon urges the trial court erred in concluding that it was bound by the conclusions of the appraisers and was unable to exercise its own discretion in finding the "fair value" of J & B Sign Company. The trial judge stated at a hearing held on February 27, 1989, that he believed that he was bound by the appraisal in determining the fair market value of the stock:

> I felt like that under 512 [sic] I had no choice but to go ahead and to appoint an appraiser and once the appraiser was appointed that *I cannot substitute my judgment for the appraisal report and that's why I found as I did.*

(Emphasis added.) However, this Court is not entitled to look to any comments that the judge may have made at the conclusion of a bench trial as being a substitute for findings of fact and conclusions of law. *In the Interest of W.E.R.*, 669 S.W.2d 716, 716 (Tex.1984).

■ We note that TEX.BUS.CORP. ACT ANN. art. 5.12(D), applicable to this case, provides that after the appraisers appointed by the court have determined the fair value of the shares of stock, the "court shall by its judgment determine the fair value of the shares of the shareholders entitled to payment therefor." The appraiser serves only as an aid to the court in determining the fair value of the shares. *Farnsworth*, 365 S.W.2d at 4. There is no provision stating that the report of the appraiser shall be binding on the parties or the court. *Id.* Accordingly, we cannot find that Baker and J & B have negated the presumption of harm.

In this Court, when the error is harmful, the normal course of action is to abate the appeal, and order the trial judge to make the appropriate findings and conclusions, so that they may be certified to this Court

for review. *Carr v. Hubbard,* 664 S.W.2d 151, 153–54 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *see also Cherne,* 763 S.W.2d at 773 (Texas Supreme Court reversed and remanded to court of appeals, with instructions for it to direct the trial court to correct its error). Because we have also sustained Gannon's first point of error, we find that it is appropriate to reverse and remand this portion of the case, rather than abate the appeal. *See* TEX.R.APP.P. 81(b).

Gannon's fourth point of error is sustained.

Because the failure of the trial court to file findings of fact and conclusions of law affects the standard of review to be used in addressing Gannon's second point of error, in which he argues that the trial court erred in concluding it was bound by the conclusions of the appraisers, we decline to address it. The absence of findings and conclusions has a similar effect on Gannon's third point of error, in which he contends that the trial court erred in accepting the appraisal report because the appraisal was not conducted pursuant to recognized methodology, and was not supported by sufficient evidence. We likewise refuse to address it.

■ In the first cross-point, Baker alleges that the trial court erred in awarding prejudgment interest at a rate of 10 percent, *compounded daily.* By way of conditional cross-point two, J & B asserts that this Court should grant it an opportunity to assert its claims against Gannon, if the case is reversed and remanded to the trial court. In the judgment, the trial court stated, "All relief sought that is not expressly herein granted is herewith denied." Because Baker and J & B did not except to the judgment, file a motion for new trial, or in any way inform the court of dissatisfaction with the judgment entered, they have waived their cross-points on this appeal. *See McLemore v. Johnston,* 585 S.W.2d 347, 349 (Tex.Civ.App.—Dallas 1979, no writ); *Security Ins. Co. v. Pioneer Casualty Co.,* 449 S.W.2d 158, 160 (Tex.Civ.App.— Houston [1st Dist.] 1969, writ ref'd n.r.e.); TEX.R.APP.P. 52(a).

Baker's cross-point and J & B's conditional cross-point second are denied.

We affirm the partial summary judgment granted by the trial court as to the oral leveling agreement. We also affirm that portion of the judgment precluding Gannon from asserting corporate causes of action against Baker personally. Further, we affirm that portion of the judgment precluding Gannon from recovering special damages from the corporation, for acts allegedly committed by Baker against the corporation, not involving the sale of the assets, even if those acts had the incidental effect of depressing the value of the corporate stock. We reverse and remand the remainder of the cause for proceedings consistent with this opinion.

O'CONNOR, J. dissents with opinion to follow.

O'CONNOR, Justice, dissenting.

I dissent.

## 1. The leveling agreement

In point of error 5, Gannon argues that the partial summary judgment on the oral agreement to "level" was wrong. (This point, though named "fifth point of error," is actually the fourth point.) The careful reader should note that the majority holds that minutes of an organizational meeting, which state Gannon received full payment, is a written contract for the purposes of the parol evidence rule, thus the parol evidence rule applies. Under the parol evidence rule, if an oral agreement was made before or at the same time as a written agreement, and if it contradicts the written agreement, a party may not offer evidence of the oral agreement. *Albritton Development v. Glendon,* 700 S.W.2d 244, 246 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Without any evidence that Gannon read and adopted the minutes as an agreement, the majority transforms minutes into a contract.

In resolving this point of error, the majority cites *Bowers Steel, Inc. v. DeBrooke,* 557 S.W.2d 369, 372–73 (Tex.App.—San Antonio 1977, no writ). There are a number

of problems with relying on *Bowers* in this case. *First*, the majority states that *Bowers* "implicitly accepted the minutes of the meeting as a written contract for purposes of the parol evidence rule." Nothing in *Bowers* says the corporate minutes could be a contract; the opinion states that the board of directors minutes ratified an earlier oral agreement, that is, implemented a plan to carry out the oral agreement. In our case, ratification plays no role.

*Second*, even if *Bowers* could be interpreted to hold that the corporate minutes amounted to a contract, to make that holding relevant here (remember: this is a summary judgment case), Baker as the movant would have to establish that, as a matter of law, that the minutes were the equivalent of a contract. In *Bowers*, the plaintiffs signed the minutes, and the court held the directors were bound by them. Here, neither Baker nor Gannon signed the minutes in our case. In his motion for summary judgment, Baker alleges the corporate minutes are a written agreement between Baker and Gannon, without stating how or why. By affirming the judgment, today's opinion holds that corporate minutes, unsigned by either party to this appeal, are, *as a matter of law* a contract.

*Third*, only if the minutes were *as a matter of law* a contract, does the issue of parol evidence arise. In its opinion, the majority holds that the minutes, Gannon's affidavit, and the trust agreement show a written contract for the purpose of the parol evidence rule *as to the corporation.* Op. at 799. The corporation was not a party to this suit. Whether an agreement would bar evidence against a non-party is not a reason to bar the evidence as to the parties in the suit.

*Fourth*, the majority states that the minutes of the corporation amounted to a contract, not between the corporation and Gannon, but between Baker and Gannon. By no stretch of the imagination can *Bowers* be interpreted to hold that the minutes of a corporation can act as a contract between two parties that do not include the corporation.

### 2. Undecided issues

In point of error 2, Gannon contends the trial court was not bound to accept the appraiser's conclusions; in point of error 3, Gannon argues that the appraisers report was not conducted according to accepted methods. The majority declines to address either point, but does not state how it disposes of the point. I suspect the majority is reversing these points as part of the reversal for failure to file findings and conclusions. It is not clear if the points are reversed and remanded on the grounds it involves the findings of fact, or if the majority is really overruling the point of error. The issues should be clarified.

### 3. Final paragraph

In the final paragraph, the majority lists the parts of the case it affirms, and then it reverses and remands the remainder. Because the body of the opinion does not state the resolution of each point of error, the final paragraph does not assist anyone in determining how the Court has ruled. At the minimum, our opinions should state clearly how we resolve each point.