**BAY AREA THORACIC AND CARDIO-VASCULAR SURGICAL ASSOCIATION, P.A., Appellant,**

v.

**Michael NATHANSON, Appellee.**

**No. 01–94–00601–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 24, 1995.

Wilfried P. Schmitz, Houston, for appellant.

Thomas W. McQuage, Galveston, for appellee.

Before HUSTON–DUNN, MIRABAL and HEDGES, JJ.

**OPINION**

HEDGES, Justice.

Bay Area Thoracic and Cardiovascular Surgical Association (BAT) appeals a judgment in favor of appellee Michael Nathanson, M.D. (Nathanson) for $98,135. Nathanson sued BAT for the value of shares of stock he owned in Non–Invasive Circulatory Diagnos-

tic Center, Inc. (NCDC) which was merged with BAT. In one point of error, appellant complains of the trial court's exclusion of evidence contesting Nathanson's ownership of the stock. In a cross-point, Nathanson alleges that the trial court erred in disallowing attorneys' fees. We affirm.

## FACTS

In 1984, Nathanson was hired by BAT, a company owned and operated by Roger Youmans and Robert Smiley. Initially, Nathanson had no ownership interest in BAT. In June, 1988, Nathanson bought 500 shares of NCDC stock, which represented a one-third interest in the company. Nathanson resigned from BAT on September 1, 1989.

Youmans and Smiley decided to merge NCDC into BAT, with BAT being the surviving entity. Despite Nathanson's objections, the merger was approved and became effective on October 1, 1990. On October 10, 1990, Nathanson submitted a written demand to BAT for payment of the fair market value for his shares of NCDC stock, estimated by Nathanson to be $250,000 before the merger. On October 30, 1990, BAT rejected Nathanson's $250,000 demand and offered $60,000 instead. Nathanson rejected the $60,000 counter-offer and filed suit against BAT in January of 1991. He brought his suit under TEX.BUS.CORP.ACT ANN. art. 5.12 (Vernon Supp.1995), which treats dissent by shareholders to certain corporate actions, to recover the value of his 500 shares of NCDC.

In 1992, the IRS notified Nathanson that a K–1 report indicated the receipt of income by him from NCDC in 1990. Nathanson denied the ownership of the income, stating that he had "terminated interest in [NCDC] in 1989."

In response to Nathanson's request for admission, BAT admitted that Nathanson was the holder of 500 shares NCDC common stock on August 31, 1990 and that at the time of trial he was still the holder of this stock. At trial, BAT offered evidence of Nathanson's response to the I.R.S. as proof that he did not own the stock on the date of the merger. The trial court refused to allow this evidence on the basis that BAT had already admitted Nathanson's ownership in its admissions. BAT's attempt to withdraw the ownership admission was unsuccessful. The trial court rendered judgment that Nathanson recover actual damages in the amount of $98,135. His prayer for attorneys' fees was denied.

## EXCLUSION OF THE I.R.S. REPLY

In point of error one, BAT contends that the trial court erred in refusing to admit evidence of Nathanson's reply to the I.R.S. as proof that he waived his ownership interest in NCDC stock before the merger. BAT sought to persuade the jury that it owed Nathanson nothing because Nathanson did not own NCDC stock at the time of the merger. To determine whether this exclusion was error, we must determine whether the trial court abused its discretion. *LSR Joint Venture No. 2 v. Callewart*, 837 S.W.2d 693, 698 (Tex.App.—Dallas 1992, writ denied).

Matters that are admitted in response to requests for admission are considered conclusive as to the admitting party. *Cartwright v. MBank Corpus Christi, N.A.,* 865 S.W.2d 546, 550 (Tex.App.—Corpus Christi 1993, no writ). Once a matter is admitted, rule 169 prohibits the introduction of contradictory evidence. *Cherry v. North American Lloyds of Texas,* 770 S.W.2d 4, 6 (Tex.App.—Houston [1st Dist.] 1989, writ denied). BAT has not brought a point of error attacking the trial court's refusal to allow BAT to withdraw its admission. We conclude, therefore, that the trial court did not abuse its discretion in refusing to admit Nathanson's response to the I.R.S. because it contradicted BAT's admission that Nathanson owned the stock before the merger.

We overrule point of error one.

## DENIAL OF ATTORNEYS' FEES

In cross-point one, Nathanson contends that the trial court erred in refusing to award him attorneys' fees. We must decide whether article 5.12 provides for awarding attorneys' fees to a prevailing shareholder, and, if not, whether attorneys' fees are available under TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon Supp.1995).

■ We do not believe that attorneys' fees are recoverable under article 5.12. This statutory provision does not specifically provide for attorneys' fees for either the dissenting shareholder or the corporation. We have found no authority treating the award of attorneys' fees under this article.

Article 5.12 provides an elaborate procedure whereby a dissenting shareholder may recover the value of his or her shares from the corporation. The procedure contemplates the appointment of appraisers and provides for their compensation. If the legislature had intended that attorneys' fees be recoverable under this article, it would have specifically provided for them. In contrast to article 5.12, other articles in the Business and Commerce Code dealing with shareholders' rights have express provisions for attorneys' fees. *See* TEX.BUS. & COM.CODE ANN. § 5.14 (Tex.UCC) (Vernon Supp.1995).

■ We further believe that a dissenting shareholder suing under article 5.12 cannot recover attorneys' fees under TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986). Nathanson contends that because this claim arises out of a contractual relationship, he is entitled to attorneys' fees under that section. In support of his argument, he cites *Milton v. Aransas Shrimp Co-op*, 668 S.W.2d 735, 740 (Tex.App.—Corpus Christi 1983, no writ). In that case, the court awarded a shareholder attorneys' fees based on the principle that the relationship between a corporation and its shareholder is contractual in nature. Therefore, it reasoned, the shareholder's cause of action for wrongful termination of its interest in the corporation sounded in contract. In other words, the shareholder was entitled to attorneys' fees under § 38.001 because he prevailed in his breach of contract suit against the corporation.

In the case before us, by contrast, Nathanson's cause of action is not a breach of contract. He chose, as a dissenting shareholder, to "cash out" his value under article 5.12 rather than remain an interest holder in the new corporation. The exclusive remedy for an action under Article 5.12 is the recovery of the value of the dissenting shareholder's corporate shares. TEX.BUS. & COM.CODE ANN.

§ 5.12(G) (Tex.UCC) (Vernon Supp.1995); *Gannon v. Baker*, 807 S.W.2d 793, 797 (Tex. App.—Houston [1st Dist.] ), *rev'd on other grounds*, 818 S.W.2d 754 (Tex.1991) (in the absence of fraud, the shareholder's only remedy in an appraisal hearing is the fair value of his shares).

The chief purpose of article 5.12 was only to provide one forum where all claims for appraisal may be consolidated, not to accommodate protracted litigation over complicated shareholder interests. TEX.BUS. & COM.CODE ANN. § 5.12 (comment of Bar Committee) (Tex.UCC) (Vernon 1980). This statute was designed to accommodate the needs of a dissenting shareholder of a closely held corporation whose stock value is not readily and easily ascertainable, unlike a publicly traded stock. Nathanson's claim was only for the determination of the fair market value of his stock as provided for in Article 5.12, not for damages for breach of contract. Therefore, there is no basis for an award of attorneys' fees under § 38.001.

We overrule cross-point one.

We affirm the judgment of the trial court.